No. 23-11097

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

STATE OF UTAH; STATE OF TEXAS; COMMONWEALTH OF
VIRGINIA; STATE OF LOUISIANA; STATE OF ALABAMA; STATE
OF ALASKA; STATE OF ARKANSAS; STATE OF FLORIDA; STATE
OF GEORGIA; STATE OF INDIANA; STATE OF IDAHO; STATE OF
IOWA; STATE OF KANSAS; COMMONWEALTH OF KENTUCKY;
STATE OF MISSISSIPPI; STATE OF MISSOURI; STATE OF
MONTANA; STATE OF NEBRASKA; STATE OF NEW HAMPSHIRE;
STATE OF NORTH DAKOTA; STATE OF OHIO; STATE OF SOUTH
CAROLINA; STATE OF TENNESSEE; STATE OF WEST VIRGINIA;
STATE OF WYOMING; LIBERTY ENERGY, INCORPORATED;
LIBERTY OILFIELD SERVICES, L.L.C.; WESTERN ENERGY
ALLIANCE; JAMES R. COPLAND; ALEX L. FAIRLY; STATE OF
OKLAHOMA,

Plaintiffs-Appellants,

v.

JULIE A. SU, Acting Secretary, U.S. Department of Labor; UNITED
STATES DEPARTMENT OF LABOR,

Defendants-Appellees.

On Appeal from the U.S. District Court
for the Northern District of Texas

**REPLY BRIEF FOR APPELLANTS**

SEAN REYES
Attorney General
STANFORD E. PURSER
Utah Solicitor General

Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
spurser@agutah.gov

BRUNN (BEAU) ROYSDEN
Fusion Law, PLLC
7600 N. 15th Street, Suite 150
Phoenix, AZ 85020
(602) 315-7545
beau@fusion.law

*Counsel for State of Utah*

NEVILLE HEDLEY
ANNA ST. JOHN
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
(917) 327-2392
ned.hedley@hlli.org
anna.stjohn@hlli.org

*Counsel for James R. Copland and
   Alex L. Fairly*

JONATHAN BERRY
  *Counsel of Record*
R. TRENT MCCOTTER
MICHAEL BUSCHBACHER
JARED M. KELSON
ANDREW W. SMITH

Boyden Gray PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
(202) 955-0620
jberry@boydengray.com

*Counsel for Liberty Energy Inc.,
   Liberty Oilfield Services LLC, and
   Western Energy Alliance*

KEN PAXTON
Attorney General
BRENT WEBSTER
First Assistant Attorney General
RALPH MOLINA
Deputy Attorney General for Legal
   Strategy
DAVID BRYANT
ZACHARY BERG
Special Counsels

Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2547
(512) 936-1700
brent.webster@oag.texas.gov
ralph.molina@oag.texas.gov
david.bryant@oag.texas.gov
zachary.berg@oag.texas.gov

*Counsel for State of Texas*

JASON MIYARES
Attorney General
KEVIN M. GALLAGHER
Principal Deputy Solicitor General

Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
kgallagher@oag.state.va.us

*Counsel for Commonwealth of
Virginia*

LIZ MURRILL
Attorney General
BEN AGUINAGA
Solicitor General
TRACY SHORT
Assistant Chief Deputy Attorney
General
MORGAN BRUNGARD
Deputy Solicitor General

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
murrille@ag.louisiana.gov
aguinagab@ag.louisiana.gov
shortt@ag.louisiana.gov
brungardm@ag.louisiana.gov

*Counsel for State of Louisiana*

STEVE MARSHALL
Attorney General
EDMUND LACOUR
Solicitor General

Alabama Attorney General's Office
501 Washington Ave
Montgomery, AL 36014
(334) 353-2196
edmund.lacour@alabamaag.gov

*Counsel for State of Alabama*

TREG TAYLOR
Attorney General
JEFFREY G. PICKETT
Senior Assistant Attorney General
BENJAMIN HOFMEISTER
Assistant Attorney General

Alaska Department of Law
123 4th Street
Juneau, AK 99801
(907) 269-5275
jeff.pickett@alaska.gov
ben.hofmeister@alaska.gov

*Counsel for State of Alaska*

TIM GRIFFIN
Attorney General
NICHOLAS J. BRONNI
Solicitor General
DYLAN JACOBS
Deputy Solicitor General

Arkansas Attorney General's
  Office
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007
nicholas.bronni@arkansasag.gov
dylan.jacobs@arkansasag.gov

*Counsel for State of Arkansas*

ASHLEY MOODY
Attorney General
HENRY C. WHITAKER
Solicitor General

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, FL 32399-1050
(850) 414-3300
henry.whitaker@myfloridalegal.com

*Counsel for State of Florida*

CHRISTOPHER M. CARR
Attorney General
STEPHEN J. PETRANY
Solicitor General
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for State of Georgia*

RAÚL R. LABRADOR
Attorney General
ALAN HURST
Solicitor General
JOSH TURNER
Chief of Constitutional Litigation
  and Policy

Idaho Attorney General's Office
700 W. Jefferson Street, Suite 210
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2400
josh.turner@ag.idaho.gov

*Counsel for State of Idaho*

BRENNA BIRD
Attorney General
ERIC H. WESSAN
Solicitor General

Iowa Attorney General's Office
1305 E. Walnut Street
Des Moines, IA 50319
(515) 281-5164
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*

THEODORE E. ROKITA
Attorney General
JAMES A. BARTA
Solicitor General

Indiana Attorney General's Office
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-6255
james.barta@atg.in.gov

*Counsel for State of Indiana*

KRIS W. KOBACH
Attorney General
ANTHONY J. POWELL
Solicitor General
JESSE A. BURRIS
Assistant Attorney General

Kansas Attorney General's Office
120 SW 10th Ave, 2nd Floor
Topeka, KS 66612
(785) 296-2215
anthony.powell@ag.ks.gov
jesse.burris@ag.ks.gov

*Counsel for State of Kansas*

RUSSELL COLEMAN
Attorney General
MATTHEW F. KUHN
Solicitor General
LINDSEY KEISER
Assistant Attorney General

Kentucky Attorney General's
  Office
700 Capital Avenue, Suite 118
Frankfort, KY
(502) 696-5478
matt.kuhn@ky.gov
lindsey.keiser@ky.gov

*Counsel for Commonwealth of
  Kentucky*

LYNN FITCH
Attorney General
JUSTIN L. MATHENY
Deputy Solicitor General

Mississippi Attorney General's
  Office
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

ANDREW BAILEY
Attorney General
JOSHUA M. DIVINE
Solicitor General
MARIA A. LANAHAN
Deputy Solicitor General

Missouri Attorney General's Office
P.O. Box 899
Jefferson City, MO 65102
(573) 751-3321
josh.divine@ago.mo.gov
maria.lanahan@ago.mo.gov

*Counsel for State of Missouri*

AUSTIN KNUDSEN
Attorney General
CHRISTIAN B. CORRIGAN
Solicitor General

Montana Department of Justice
215 N. Sanders St
Helena, MT 59601
(406) 444-2707
christian.corrigan@mt.gov

*Counsel for State of Montana*

MICHAEL T. HILGERS
Attorney General
ERIC J. HAMILTON
Solicitor General

Nebraska Attorney General's
  Office
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for State of Nebraska*

JOHN M. FORMELLA
Attorney General
MARK W. DELL'ORFANO
Assistant Attorney General

New Hampshire Department of
 Justice
1 Granite Place
Concord, NH 03301
(603) 271-3650
mark.w.dellorfano@doj.nh.gov

*Counsel for State of New*
 *Hampshire*

DREW H. WRIGLEY
Attorney General
PHILIP AXT
Solicitor General

North Dakota Attorney General's
 Office
600 E Boulevard Ave, Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.govctitus@nd.gov

*Counsel for State of North Dakota*

DAVE YOST
Attorney General
T. ELLIOT GAISER
Solicitor General
MATHURA J. SRIDHARAN
Deputy Solicitor General

Ohio Attorney General's Office
30 E. Broad St, 17th Fl.
Columbus, OH 43215
(614) 728-7511
thomas.gaiser@OhioAGO.gov
mathura.§ridharan@OhioAGO.gov

*Counsel for State of Ohio*

GENTNER F. DRUMMOND
Attorney General
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation

Oklahoma Attorney General's
 Office
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov
zach.west@oag.ok.gov

*Counsel for State of Oklahoma*

ALAN WILSON
Attorney General
THOMAS T. HYDRICK
Assistant Deputy Solicitor General

South Carolina Attorney General's
   Office
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for State of South Carolina*

JONATHAN SKRMETTI
Attorney General and Reporter
GABRIEL KRIMM
Assistant Solicitor General

Office of the Attorney General and
   Reporter of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207
(615) 532-5596
gabriel.krimm@ag.tn.gov

*Counsel for State of Tennessee*

F. SCOTT FLOW
Flow Law Firm, PLLC
800 SW 9th Avenue
Amarillo, Texas 79101-3206
(806) 372-2010
fsflow@flowlaw.com

*Co-Counsel for Appellants Except
   States of Texas, Tennessee*

PATRICK MORRISEY
Attorney General
LINDSAY S. SEE
Solicitor General
MICHAEL R. WILLIAMS
Principal Deputy Solicitor General

West Virginia Attorney General's
   Office
State Capitol Complex, Bldg 1,
Rm E-26
1900 Kanawha Blvd. E
Charleston, WV 25305
(681) 313-4550
lindsay.s.see@wvago.gov
michael.r.williams@wvago.gov

*Counsel for State of West Virginia*

BRIDGET HILL
Attorney General
RYAN SCHELHAAS
Chief Deputy Attorney General

Office of the Wyoming Attorney
   General
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for State of Wyoming*

# CERTIFICATE OF INTERESTED PERSONS

## *State of Utah, et al. v. Su, et al.*
## No. 23-11097

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

The following are Plaintiffs-Appellants:

1.  Liberty Energy Inc. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

2.  Liberty Oilfield Services LLC. It is a subsidiary of Liberty Energy Inc.

3.  Western Energy Alliance. It is a tax-exempt business league under 26 U.S.C. § 501(c)(6).

4.  James R. Copland

5.  Alex L. Fairly

6.  State of Utah

7.  State of Texas

8.  Commonwealth of Virginia

9.    State of Louisiana

10.   State of Alabama

11.   State of Alaska

12.   State of Tennessee

13.   State of Arkansas

14.   State of Florida

15.   State of Georgia

16.   State of Indiana

17.   State of Idaho

18.   State of Iowa

19.   State of Kansas

20.   Commonwealth of Kentucky

21.   State of Mississippi

22.   State of Missouri

23.   State of Montana

24.   State of Nebraska

25.   State of New Hampshire

26.   State of North Dakota

27.   State of Ohio

28. State of Oklahoma

29. State of South Carolina

30. State of West Virginia

31. State of Wyoming

The following are Defendants-Appellees:

32. Julie A. Su is a defendant in her official capacity. She is the Acting Secretary of the U.S. Department of Labor.

33. The U.S. Department of Labor

The following are counsel for Plaintiffs-Appellants:

34. Boyden Gray PLLC: Jonathan Berry, R. Trent McCotter, Michael B. Buschbacher, Jared M. Kelson, Caleb Orr, and Andrew W. Smith.

35. Fusion Law, PLLC: Brunn (Beau) Roysden.

36. Flow Law Firm: F. Scott Flow.

37. Hamilton Lincoln Law Institute: Neville Hedley and Anna St. John.

38. Utah Attorney General's Office: Sean Reyes, Melissa A. Holyoak, Christopher A. Bates, and Stanford E. Purser.

39. Texas Office of the Attorney General: Ken Paxton, Brent Webster, Grant Dorfman, Ralph Molina, David Bryant, and Zachary Berg.

40. Virginia Attorney General's Office: Jason Miyares, Andrew N. Ferguson, and Kevin M. Gallagher.

41. Louisiana Department of Justice: Liz Murrill, Joseph S. St. John, Tracy Short, Morgan Brungard, and Ben Aguinaga.

42. Alabama Attorney General's Office: Steve Marshall and Edmund LaCour.

43. Alaska Department of Law: Treg Taylor, Jeffrey G. Pickett, and Benjamin Hofmeister.

44. Office of the Attorney General and Reporter of Tennessee: Jonathan Skrmetti and Gabriel Krimm.

45. Arkansas Attorney General's Office: Tim Griffin, Nicholas J. Bronni, and Dylan Jacobs.

46. Office of the Florida Attorney General: Ashley Moody and Henry C. Whitaker.

47. Georgia Department of Law: Christopher M. Carr and Stephen J. Petrany.

48. Indiana Attorney General's Office: Theodore E. Rokita and James A. Barta.

49. Idaho Attorney General's Office: Raul R. Labrador, Alan Hurst, and Josh Turner.

50. Iowa Attorney General's Office: Brenna Bird and Eric H. Wessan.

51. Kansas Attorney General's Office: Kris W. Kobach, Anthony J. Powell, and Jessee A. Burris.

52. Kentucky Attorney General's Office: Russell Coleman, Matthew F. Kuhn, and Lindsey Keiser.

53. Mississippi Attorney General's Office: Lynn Fitch, Scott G. Stewart, and Justin L. Matheny.

54. Missouri Attorney General's Office: Andrew Bailey, Joshua Divine, and Maria A. Lanahan.

55. Montana Department of Justice: Austin Knudsen and Christian B. Corrigan.

56. Nebraska Attorney General's Office: Michael T. Hilgers and Eric J. Hamilton.

57. New Hampshire Department of Justice: John M. Formella and Mark W. Dell'Orfano.

58. North Dakota Attorney General's Office: Drew H. Wrigley and Phillip Axt.

59. Ohio Attorney General's Office: Dave Yost, T. Elliot Gaiser, and Mathura J. Sridharan.

60. Oklahoma Attorney General's Office: Genter F. Drummond, Garry M. Gaskins, II, and Zach West.

61. South Carolina Attorney General's Office: Alan Wilson and Thomas T. Hydrick.

62. West Virginia Attorney General's Office: Patrick Morrisey, Lindsay S. See, and Michael R. Williams.

63. Office of the Wyoming Attorney General: Bridget Hill and Ryan Schelhaas.

Counsel for Defendants-Appellees:

64. U.S. Department of Justice: Daniel Winik, Brian M. Boynton, Leigha Simonton, Michael S. Raab, Brad P. Rosenberg, Leslie Cooper Vigen, and Cassandra Snyder.

Amici supporting Plaintiffs-Appellants:

65. Edward A. Zelinsky

66. National Center for Public Policy Research. It is a nonprofit corporation that does not have any parent companies, subsidiaries, or affiliates, and does not issue shares to the public.

67. Manhattan Institute for Policy Research. It is a nonprofit corporation that does not have any parent companies, subsidiaries, or affiliates, and does not issue shares to the public.

68. Allen Mendenhall

69. National Federation of Independent Business Small Business Legal Center. It is a public interest law firm under 26 U.S.C. § 501(c)(3).

70. Texas Public Policy Foundation. It is a nonprofit corporation that does not have any parent companies, subsidiaries, or affiliates, and does not issue shares to the public.

71. Texas State Senator Bryan Hughes

Amici supporting Defendants-Appellees:

72. Institute for Policy Integrity at New York University School of Law

73. Donald T. Bogan

74. Richard L. Kaplan.

75. Dana M. Muir

76. Norman P. Stein

77. Lauren K. Valastro

78. Peter J. Wiedenbeck

79. J. Mark Iwry

80. The American Retirement Association

81. Ceres, Incorporated

82. State of New York

83. State of Arizona

84. State of California

85. State of Colorado

86. State of Connecticut

87. State of Delaware

88. State of Hawaii

89. State of Illinois

90. State of Maine

91. State of Maryland

92. State of Massachusetts

93. State of Michigan

94. State of Minnesota

95. State of Nevada

96. State of Oregon

97. State of Pennsylvania

98. State of Rhode Island

99. State of Vermont

100. State of Washington

101. District of Columbia

Counsel for Amici supporting Plaintiffs-Appellants:

102. Edward A. Zelinsky

103. National Center for Public Policy Research: Scott Shepard.

104. Manhattan Institute: Ilya Shapiro.

105. Allen Mendenhall

106. Texas Public Policy Foundation: Robert Henneke, Chance Weldon, and Christian Townsend.

107. Mitchell Law PLLC: Jonathan F. Mitchell

Counsel for Amici supporting Defendants-Appellees:

108. Institute for Policy Integrity at New York University School of Law: Jessica H. Arnell and Donald L.R. Goodson.

109. Office of New York Attorney General: Letitia James, Barbara D. Underwood, Ester Murdukhayeva, and Philip J. Levitz.

110. Office of Arizona Attorney General: Kristin K. Mayes.

111. Office of California Attorney General: Rob Bonta.

112. Office of Colorado Attorney General: Phillip J. Weiser.

113. Office of Connecticut Attorney General: William Tong.

114. Office of Delaware Attorney General: Kathleen Jennings.

115. Office of Hawai'i Attorney General: Anne E. Lopez.

116. Office of Illinois Attorney General: Kwame Raoul.

117. Office of Maine Attorney General: Aaron M. Frey.

118. Office of Mayland Attorney General: Anthony G. Brown.

119. Office of Massachusetts Attorney General: Andrea Joy Campbell.

120. Office of Michigan Attorney General: Dana Nessel.

121. Office of Minnesota Attorney General: Keith Ellison.

122. Office of Nevada Attorney General: Aaron D. Ford.

123. Office of Oregon Attorney General: Ellen F. Rosenblum.

124. Office of Pennsylvania Attorney General: Michelle A. Henry.

125. Office of Rhode Island Attorney General: Peter F. Neronha.

126. Office of Vermont Attorney General: Charity R. Clark.

127. Office of Washington Attorney General: Robert W. Ferguson.

128. Office of District of Columbia Attorney General: Brian L. Schwalb.

129. Emmett Environmental Law & Policy Center: Andrew C. Mergen, Rosa Hayes, Sommer H. Engels.

130. Covington & Burling LLP: Robert A. Long, Richard C. Shea, Thomas Brugato, Jason M. Levy, Jack Lund, Emily A. Vernon, and Adam Spiegel.

131. Mayor Brown LLP: Andrew J. Pincus, E. Brantley Webb, Erin K. Cho, and Jennifer L. Weinberg.


Dated: April 11, 2024     /s/ Jonathan Berry
               JONATHAN BERRY

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................ xii

TABLE OF AUTHORITIES ................................................... xiii

INTRODUCTION ..................................................................... 1

ARGUMENT ............................................................................ 3

    I.    The 2022 Rule's Tiebreaker Provision Violates ERISA. ........ 3

        A.    The Tiebreaker Provision is Contrary to Law .............. 3

        B.    DOL Concedes Past Practice Doesn't Justify the Tiebreaker Provision. ................................................... 18

        C.    DOL Abandons *Chevron* Deference. ........................... 19

    II.    The 2022 Rule Is Arbitrary and Capricious. ....................... 19

        A.    The 2022 Rule Is Internally Inconsistent and Unreasonable. ............................................................. 20

        B.    The 2022 Rule Considered Improper Factors. ............ 23

        C.    The 2022 Rule Failed to Consider Important Aspects of the Problem or Justify the Agency's Departure from Past Factual Findings. ....................... 27

    III.    Vacatur is Appropriate. ....................................................... 30

    IV.    The Court Should Note DOL's Concessions. ....................... 33

CONCLUSION ...................................................................... 34

CERTIFICATE OF SERVICE ............................................. 43

CERTIFICATE OF COMPLIANCE ..................................... 44

**Page(s)**

**Cases**

*Biden v. Nebraska,*
    143 S. Ct. 2355 (2023)..........................................................................18

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.,*
    __ F.4th __, 2024 WL 1461737 (5th Cir. April 4, 2024) ...............18, 31

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.,*
    631 F. Supp. 3d 125 (S.D.N.Y. 2022) ....................................................6

*Cargill v. Garland,*
    57 F.4th 447 (5th Cir. 2023) .................................................................19

*City of Chicago v. Barr,*
    961 F.3d 882 (7th Cir. 2020).................................................................32

*Corner Post v. Bd. of Governors of the Fed. Rsrv. Sys.,*
    No. 22-1008 (U.S. Supreme Court) .......................................................31

*Data Mktg. P'ship, LP v. DOL,*
    45 F.4th 846 (5th Cir. 2022) .................................................................31

*Dep't of Com. v. New York,*
    139 S. Ct. 2551 (2019).........................................................................20

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009).............................................................................30

*FCC v. Prometheus Radio Project,*
    141 S. Ct. 1150 (2021).........................................................................19

*Fifth Third Bancorp v. Dudenhoeffer,*
    573 U.S. 409 (2014).............................................................................13

*Franciscan All., Inc. v. Becerra,*
    47 F.4th 368 (5th Cir. 2022) .................................................................31

*Fulton Nat'l Bank v. Tate*,
  363 F.2d 562 (5th Cir. 1966).......................................... 4, 13

*Hall v. Hall*,
  584 U.S. 59 (2018)........................................................ 10

*Halperin v. Richards*,
  7 F.4th 534 (7th Cir. 2021) ....................................... 13, 14

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
  141 S. Ct. 2172 (2021).................................................. 19

*Int'l Bhd. of Elec. Workers, Loc. 90 v. Nat'l Elec. Contractors Ass'n*,
  No. 3:06-cv-2, 2008 WL 918481 (D. Conn. Mar. 31, 2008).................. 6

*Kinney-Coastal Oil Co. v. Kieffer*,
  277 U.S. 488 (1928)...................................................... 31

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019)................................................... 34

*Luminant Generation Co., LLC v. EPA*,
  675 F.3d 917 (5th Cir. 2012)......................................... 26, 27

*Mitchell v. Robert DeMario Jewelry, Inc.*,
  361 U.S. 288 (1960)...................................................... 31

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)................................................... 19, 26

*NLRB v. Amax Coal Co.*,
  453 U.S. 322 (1981)................................................. 14, 15

*NLRB v. SW Gen., Inc.*,
  580 U.S. 288 (2017)...................................................... 13

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,
  506 A.2d 173 (Del. 1986)................................................. 5

*Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*,
  960 F.3d 190 (5th Cir. 2020)............................................ 10

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ................................................................ 5

*Sw. Elec. Power Co. v. EPA*,
920 F.3d 999 (5th Cir. 2019) ................................................ 29

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020) .......................................................... 4

*Treme v. St. John the Baptist Par. Council*,
93 F.4th 792 (5th Cir. 2024) ............................................... 29

*West Virginia v. EPA*,
597 U.S. 697 (2022) .............................................................. 17

**Statutes**

11 U.S.C. § 507 ....................................................................... 4

29 U.S.C. § 1001 ................................................................... 28

29 U.S.C. § 1103 ............................................................... 2, 3

29 U.S.C. § 1104 ............................................................... 2, 3

29 U.S.C. § 1106 ................................................................... 6

42 U.S.C. § 2000e-2 ............................................................. 5

Unif. Prudent Inv. Act § 5 (Unif. L. Comm'n 1995) ................ 11

**Regulatory Materials**

*IB 94-1*,
59 Fed. Reg. 32,606 (June 23, 1994) .................................. 22

*Financial Factors in Selecting Plan Investments*,
85 Fed. Reg. 39,113, (June 20, 2020) (proposed rule) ........... 6

*Financial Factors in Selecting Plan Investments*,
85 Fed. Reg. 72,846 (Nov. 13, 2020) ............. 6, 7, 21, 22, 23, 25, 26, 20

*Fiduciary Duties Regarding Proxy Voting and Shareholder Rights*,
    85 Fed. Reg. 81,658 (Dec. 16, 2020) ................................................. 6, 22

*Prudence and Loyalty in Selecting Plan Investments and*
    *Exercising Shareholder Rights*,
    87 Fed. Reg. 73,822 (Dec. 1, 2022) .. 1, 15, 16, 20, 21, 22, 24, 25, 26, 27

## Executive Orders

Exec. Order No. 13990, 86 Fed. Reg. 7,037 (Jan. 15, 2021) ................... 20

## Other Authorities

*Exclusive*, Black's Law Dictionary (11th ed. 2019) .................................. 4

Felix Frankfurter, *Some Reflections on the Reading of Statutes*,
    47 Colum. L. Rev. 527 (1947) ................................................. 10

*Frequently Asked Questions*, Am. L. Inst.,
    https://www.ali.org/about-ali/faq/ ......................................... 11

Restatement (Second) of Trusts § 170 ................................................ 6, 10

Restatement (Third) of Trusts § 78 ....................................... 6, 11, 12, 28

Restatement (Third) of Trusts § 90 ..................................................... 9, 12

*Solely*, Merriam-Webster Dictionary Online,
    https://www.merriam-webster.com/dictionary/solely .......................... 4

# **INTRODUCTION**

The Department of Labor's 2022 Rule purports to authorize ERISA fiduciaries to make decisions "based on collateral benefits other than investment returns" whenever competing investments "equally serve the financial interests of the plan over the appropriate time horizon." *Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights* ("2022 Rule"), 87 Fed. Reg. 73,822, 73,885 (Dec. 1, 2022) (codified at 29 C.F.R. § 2550.404a-1(c)(2)). DOL claims this tiebreaker provision doesn't violate ERISA because the duty of loyalty merely prohibits fiduciaries from *subordinating* the interests of retirement plan participants to collateral considerations. DOL has abandoned its request for deference under *Chevron* that prevailed in the District Court, and even conceded that past agency practice does not justify its interpretation of ERISA. It now defends its tiebreaker provision solely as a matter of statutory interpretation.

DOL is wrong. The tiebreaker provision violates the plain language of ERISA, which nowhere implements an anti-subordination principle. Instead, ERISA's duty of loyalty is a broad prophylactic designed to prohibit *any* influence of collateral considerations. The text of ERISA—

which requires fiduciaries to act "solely" and "for the exclusive purpose" of providing financial benefits to participants—makes this clear. 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(A). Those terms literally *exclude* every other consideration, including the environmental, social, and governance ("ESG") factors that DOL seeks to provide cover for here.

Longstanding common law principles and Supreme Court precedent underscore that conclusion. The major-questions doctrine also requires clear statutory authority for such a vast, controversial rulemaking, which DOL fails to identify.

Moreover, the 2022 Rule is arbitrary and capricious. It acknowledges that no two investment options are the same, but decides fiduciaries need a tiebreaker to decide between them. It then expands the tiebreaker provision and removes documentation requirements to make it easier for fiduciaries to declare ties and consider ESG. And it failed to consider increased oversight burdens or repudiate factual findings in the 2020 Rules. DOL continues the same deficient reasoning on appeal.

The 2022 Rule consistently loosened restrictions on ESG considerations and reduced oversight instead of protecting the financial interests of retirement plan participants. This Court should reverse.

# ARGUMENT

## I. THE 2022 RULE'S TIEBREAKER PROVISION VIOLATES ERISA.

### A. The Tiebreaker Provision is Contrary to Law.

ERISA prohibits the use of collateral considerations as a tiebreaker. Op.Br.25–50. DOL says nothing in response that would justify departing from this straightforward reading of the statute.

> #### 1. *The text and structure of ERISA prohibit collateral considerations.*

ERISA requires fiduciaries to act "solely" and "for the exclusive purpose of" providing "benefits to participants and their beneficiaries." 29 U.S.C. §§ 1103(c)(1), 1104(a)(1)(A). The ordinary meaning of this text categorically forbids collateral considerations. Op.Br.25–26. And while ERISA includes some exceptions, it nowhere permits collateral considerations as a tiebreaker. *See* Op.Br.25–31.

DOL claims the tiebreaker provision in the 2022 Rule is nonetheless "consistent with the statutory obligations of prudence and loyalty" because it still prohibits a fiduciary from "'subordinat[ing] the interests of the participants and beneficiaries … to any other objective.'" Resp.Br.27–28 (quoting 87 Fed. Reg. at 73,885). That is wrong. "Solely" means *solely*; "exclusive" means *exclusive*. Neither mean *first* or *primary*.

Congress certainly could have written an anti-subordination principle, but it did not, and for good reason. By insisting on a sole consideration—the financial interests of participants and beneficiaries—Congress imposed a "prophylactic" to prevent the risk that collateral influences would distract or tempt fiduciaries to deviate from the statutory goal, whether consciously or unconsciously. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1636 (2020) (Sotomayor, J., dissenting); *Fulton Nat'l Bank v. Tate*, 363 F.2d 562, 572 (5th Cir. 1966).[1]

ERISA requires fiduciaries to give "whole, undivided" focus to the financial interests of participants, pursuing that consideration "to the exclusion of all else." Op.Br.26 (quoting *Exclusive*, Black's Law Dictionary (11th ed. 2019), and *Solely*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/solely). There are *no* other permissible factors. When Congress wants to ensure considerations "have priority in the following order," creating a hierarchy like in bankruptcy proceedings, 11 U.S.C. § 507(a), it knows how to do so.

---

[1] The government elsewhere has agreed that ERISA's fiduciary duties serve as "prophylactic provisions," just apparently not in this case. Br. for the U.S. as Amicus Curiae Supporting Petitioners at 20, *Thole*, 140 S. Ct. 1615 (filed Sept. 18, 2019) (No. 17-1712).

Text like that creates an anti-subordination rule. But ERISA is different, and financial returns must be the "sole" and "exclusive" considerations.

Prophylactic rules are common to prevent even the risk of impermissible influences in situations that are particularly sensitive or otherwise prone to abuse. The U.S. Constitution and Title VI of the Civil Rights Act of 1964 prohibit racial discrimination by state actors and entities receiving federal funds, including reliance on race as a "tip" factor to resolve ties, no matter how infrequent. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 195, 219 (2023); *see also id.* at 290, 294 (Gorsuch, J., concurring). Title VII of the Civil Rights Act prohibits the consideration of race in employment decisions, even as a bona fide occupational consideration, 42 U.S.C. § 2000e-2(a), (e). Corporate law recognizes that the "'omnipresent specter'" of even potential conflicts of interest necessitates a prophylactic rule that decisionmakers must aim solely to maximize shareholder value to the exclusion of all else. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173, 180 (Del. 1986). And trust law imposes the duty of loyalty to the same end, stamping out even "occasions of

temptation." Restatement (Third) of Trusts § 78 cmts. b, f (2007); *see* Restatement (Second) of Trusts § 170 cmt. q (1959); Part I.A.2, *infra*.

Consistent with this prophylactic approach, ERISA further bars certain transactions regardless of their financial benefits because they present the risk of self-dealing and are tainted by indicia of collateral interest. *See* 29 U.S.C. § 1106; *Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, 631 F. Supp. 3d 125, 136 (S.D.N.Y. 2022); *Int'l Bhd. of Elec. Workers, Loc. 90 v. Nat'l Elec. Contractors Ass'n*, No. 3:06-cv-2, 2008 WL 918481, at *14 (D. Conn. Mar. 31, 2008) (the fiduciary duties ERISA adopted are a "'prophylactic rule intended to remove all incentive to breach'"). The 2020 Rules,[2] which the 2022 Rule replaced, similarly applied ERISA's duty of loyalty to categorically prohibit the selection of qualified default investment alternatives ("QDIAs") that consider non-pecuniary factors, because they tend to "favor the fiduciary's own policy preference," *Financial Factors in Selecting Plan Investments*, 85 Fed. Reg. 39,113, 39,119 (June 20, 2020) (proposed rule), in a context that "sweep[s] in

---

[2] *Financial Factors in Selecting Plan Investments*, 85 Fed. Reg. 72,846 (Nov. 13, 2020), and *Fiduciary Duties Regarding Proxy Voting and Shareholder Rights*, 85 Fed. Reg. 81,658 (Dec. 16, 2020) (collectively, "2020 Rules").

many participants and beneficiaries with less investment experience and sophistication" to sort between genuinely material versus collateral factors, 85 Fed. Reg. at 72,866.

DOL claims that sometimes "an investment choice *cannot be resolved* merely by applying that statutory duty" (i.e., the duty of loyalty), so a fiduciary can rely on *any* collateral factor because the duty of loyalty will be satisfied "*no matter how* he resolves the choice." Resp.Br. 30–31. That fundamentally misunderstands the duty of loyalty. Fiduciaries satisfy that duty *only* by limiting themselves to permissible considerations, regardless of a tie. Fiduciaries conversely violate that duty by considering prohibited factors, regardless of actual harm to beneficiaries. The duty of *loyalty* guards against corrupting influences no matter how many investment options might satisfy the duty of *prudence*.

DOL's construction-project hypothetical is revealing. It posits "two competing projects" with "the same expected risk and return over the time horizon for which plan assets are invested," but "given the minimum investment required for either project, the plan cannot invest in both." *Id.*

Not even this scenario results in a "tie." Any two construction projects will be at different locations, managed by different firms, or follow different plans. Even if the two projects could "equally serve the financial interests of the plan," fiduciaries and other investors distinguish between similar options with similar risk-adjusted values for a living. Resp.Br.32 (quoting 87 Fed. Reg. at 73,885). And every day, they manage to make reasonable choices between similar assets, motivated only by financial results and without simply selecting the option that best aligns with their politics. *See, e.g.*, Sen.Hughes.Amicus.Br.23–25 (detailing how investors assess investment options). These situations *can* be resolved consistent with the statutory duty of loyalty, as ERISA requires. DOL attempts to create ties where none exist.

Even accepting DOL's premise that the construction-project hypothetical presents a tie, plenty of possible tiebreakers remain available that are focused solely and exclusively on financial considerations. Fiduciaries and other investors regularly fashion finance-focused rules of thumb to guide close calls. Which opportunity is most certain to avoid a loss? Which project has the highest upside? Which project is most certain to have immediate returns? The real world is not

a perfectly controlled laboratory experiment—there are always differences.

Ties or no ties, what a fiduciary *cannot* do under ERISA is make decisions based on politics, ESG, or any other collateral considerations. Even random selection protects against untoward influences and is therefore superior. After all, the wisdom of prophylactic rules is that opening the door even a little to improper considerations risks too much and can encourage finding ties. *See also* Zelinsky.Amicus.Br.11–12; *see* Part I.A.2, *infra*.

Finally, DOL fails to even address the clear implication that by providing some exceptions to the duty of loyalty, ERISA prohibited all others. Op.Br.27–29. DOL further concedes that ERISA supplies its own tiebreaker for otherwise equivalent prudent investments: diversification. Resp.Br.32. That tiebreaker functionally resolves the issues the 2022 Rule purports to address since "thorough diversification is practical for nearly all trustees." Restatement (Third) of Trusts § 90 cmt. g.

Accordingly, the text and structure of ERISA foreclose the tiebreaker provision in the 2022 Rule.

2. *The common law of trusts confirms that ERISA forbids collateral considerations.*

It is undisputed that ERISA's fiduciary duties were "derived from the common law of trusts and are the highest known to the law." *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 194 (5th Cir. 2020) (cleaned up). When statutory language is "obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947); *see Hall v. Hall*, 584 U.S. 59, 73 (2018).

That "old soil" confirms the duty of loyalty prohibits collateral considerations, even as a tiebreaker. Op.Br.31–35. When Congress passed ERISA in 1974, the Second Restatement of Trusts summarized then-current law, explaining that a "trustee is under a duty to the beneficiary in administering the trust not to be guided by the interest of any third person." Restatement (Second) of Trusts § 170 cmt. q. There's not even a hint of equivocation about social investing, including for hypothetical ties.

DOL seems to recognize this, as it instead relies on a "reporter's note" from the Third Restatement of Trusts—published more than thirty

years later—stating that "considerable disagreement continues about what loyalty should require in th[e] context" of "social investing." Restatement (Third) of Trusts § 78 reporter's note to cmt. f.[3]

Reporter's notes don't state black-letter law and are not voted on by the American Law Institute Council that publishes the Restatements. They merely provide background material and "suggest related areas for investigation." *Frequently Asked Questions*, Am. L. Inst., https://www.ali.org/about-ali/faq/ (last visited Apr. 11, 2024) (answering "What is in a Restatement?").

The Third Restatement itself—rather than a stray reporter's note—strongly supports Plaintiffs-Appellants. Section 78 of that Restatement is succinct: "a trustee has a duty to administer the trust solely in the interest of the beneficiaries." Restatement (Third) of Trusts § 78(1).

---

[3] DOL also quotes the reporter's note as saying that "social investing" cannot be "consistent with the duty of loyalty if the investment activity entails sacrificing the interests of trust beneficiaries." Resp.Br.35 (cleaned up). That language is not from the reporter, but is rather a block quote from commentary to the Uniform Prudent Investor Act, which the reporter included as evidence of the disagreement. *See* Restatement (Third) of Trusts § 78 reporter's note to cmt. f; Unif. Prudent Inv. Act § 5 cmt. (Unif. L. Comm'n 1995). Commentary on a model, uniform state law proposed by scholars decades after ERISA was enacted says nothing about the duty of loyalty as it existed when Congress passed that statute.

Comments on that section further explain that "the trustee has a duty to the beneficiaries not to be influenced by the interest of any third person or by motives other than the accomplishment of the purposes of the trust," *id.* § 78 cmt. f, and trust law prefers to "remove altogether the occasions of temptation rather than to monitor fiduciary behavior and attempt to uncover and punish abuses when a trustee has actually succumbed to temptation," *id.* cmt. b. It is telling that DOL ignores these clear statements and instead relies on a mere reporter's note.

DOL then turns to comment c on section 90 of the Third Restatement to show "divergent case law and scholarship" on "social investing." Resp.Br.35. But that comment says the opposite, reiterating that "the trustee's decisions ordinarily must *not* be motivated by a purpose of advancing or expressing the trustee's personal views concerning social or political issues or causes." Restatement (Third) of Trusts § 90 cmt. c (emphasis added). The exceptions to this prohibition are narrow and included in the comment itself. Social considerations are allowed only when "permitted by the terms of the trust or by consent of the beneficiaries," or as part of a "charitable trust[]" that is focused on the "social issue or cause in question." *Id.* These exceptions cannot apply

to ERISA plans, which Congress subjected to non-waivable duties to act solely for the purpose of providing financial benefits to participants. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416, 420–21 (2014); Op.Br.25–26. And by listing those exceptions, the comment implies that no others exist. *Cf. NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (explaining *expressio unius* canon).

Applying these trust-law principles, this Court was clear in *Fulton National Bank* that "[i]t is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction," because "[c]onsciously or unconsciously he will favor one side as against the other, where there is *or may be a conflict of interest*." 363 F.2d at 571 (cleaned up) (emphasis added). Indeed, a fiduciary cannot even "allow[] himself *to be placed in a position* where his personal interest might conflict with the interest of the beneficiary." *Id.*; *see Halperin v. Richards*, 7 F.4th 534, 546 (7th Cir. 2021) (similar).

DOL tries to distinguish this case law by saying the tiebreaker provision "applies only where no such conflict can exist." Resp.Br.36 (cleaned up). But trust law prohibits not only conflicts of interest, but

also situations where they could possibly arise, including decision-making with *any* mixed motives. DOL's argument rests on the assumption that assumed compliance with fiduciary duties can somehow explain away rules designed to prevent those situations from arising in the first place.

Perhaps that is why DOL has no response for the "irrebuttable presumption of wrongdoing" that applies when fiduciaries act with even "harmless" mixed motives. *Halperin*, 7 F.4th at 546 (cleaned up); *see* Op.Br.33 (collecting sources). That alone is enough to resolve this issue.

> 3. *The Supreme Court has already interpreted "sole and exclusive benefit" to bar collateral considerations.*

In *NLRB v. Amax Coal Co.*, 453 U.S. 322 (1981), the Supreme Court confirmed that ERISA's duty of loyalty is a broad prophylactic. *See* Op.Br.34–35. DOL tries to distinguish *Amax Coal* on its facts, noting the case involved the risk of dual loyalties on a trust fund management board. Resp.Br.36. That is irrelevant. The Court's interpretation of the "sole and exclusive benefit" provision answers the key question of this case: Is the duty of loyalty an anti-subordination rule or a broad prophylactic?

On that point, *Amax Coal* could not have been clearer. "A fiduciary cannot contend that, although he had conflicting interests, he served his masters equally well or that his primary loyalty was not weakened by the pull of his secondary one." 453 U.S. at 330 (cleaned up). *Amax Coal* then cited ERISA, explaining it incorporated the same principle. *Id.* at 332–33. The duty of loyalty does not turn a blind eye to improper considerations that allegedly don't subordinate financial performance and thus cause no injury. The duty of loyalty prohibits even the "pull" that inevitably accompanies extraneous factors. *Id.* at 330.

    4.     *The major-questions doctrine forecloses the tiebreaker provision.*

The tiebreaker provision allows fiduciaries to channel large sums of money in politically controversial ways, short-circuiting the legislative process and transforming ERISA. It thus requires clear statutory authorization. Op.Br.36–41. DOL identifies none.

DOL instead disputes that large sums of money are at stake. While ERISA protects nearly $13 trillion in assets, DOL dismisses that amount by claiming only about 0.03 percent is invested in ESG funds. Resp.Br.38; *see* 87 Fed. Reg. at 73,857. That's still $3.9 billion, which will almost certainly increase. The 2022 Rule expressly acknowledges the surge in

pressure for ESG investing, noting that from 2018 to 2020, the amount of assets managed under an ESG strategy increased by 42 percent. 87 Fed. Reg. at 73,857. And in state and local public pensions, where ERISA's duty of loyalty does not apply, ESG runs rampant. *See* Op.Br.37. By diluting the prophylactic duty of loyalty, the tiebreaker *by design* allows fiduciaries to bow to that same pressure, consciously or unconsciously. Recent conduct by many fiduciaries is consistent with the 2022 Rule having this effect. Sen.Hughes.Amicus.Br.11–22 (collecting examples).

DOL does not dispute that ESG is one of the most controversial, current political issues. Op.Br.38. Instead, DOL insists it did not circumvent the legislative process because the host of ESG-focused proposals in Congress are broader than the narrow issue of the tiebreaker provision. Resp.Br.39. Congress disagrees, having passed a joint resolution to revoke the 2022 Rule under the Congressional Review Act. Op.Br.38. It's impossible to deny the 2022 Rule was politically significant in the face of congressional action disapproving and seeking to rescind the rulemaking. That alone should trigger the major questions doctrine. The participation of 45 states and the District of Columbia as either

parties or amicus in this litigation further underscores that point. *See* States.Br.

In any event, the power seized by the agency need not perfectly match a current legislative proposal to implicate the major-questions doctrine, which considers only whether Congress "declined to enact *similar* measures," not identical ones. *West Virginia v. EPA*, 597 U.S. 697, 732 (2022) (emphasis added); *see also id.* at 743 (Gorsuch, J., concurring) (whether "Congress has considered and rejected bills authorizing *something akin to* the agency's proposed course of action" is itself "telling" (cleaned up) (emphasis added)).

DOL also claims its history of allowing tiebreakers renders the major-questions doctrine inapplicable because the agency does not wield unheralded power. Resp.Br.40. This ignores that one of the most foundational major-questions cases arose in the context of an agency that had a history of issuing orders similar to the one held unlawful. *See* Op.Br.41 (citing *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218 (1994)). DOL fails to acknowledge, let alone address, that point. Moreover, DOL's guidance on tiebreakers emerged two decades after

Congress passed ERISA and has always been controversial, which is hardly a strong historical pedigree.

In any event, when even several "indicators" of a major question are present, "[c]ommon sense" dictates that Congress would not have delegated such power "without saying so more clearly." *Biden v. Nebraska*, 143 S. Ct. 2355, 2384 (2023) (Barrett, J., concurring). *MCI* validates that common-sense point. The prerequisite threshold is far surpassed here.

## B. DOL Concedes Past Practice Doesn't Justify the Tiebreaker Provision.

DOL's past practice of authorizing tiebreakers is not the kind that merits deference. Op.Br.42–45; *see also Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, __ F.4th __, 2024 WL 1461737, at *13 (5th Cir. April 4, 2024) (holding that "near-exclusive reliance on agency custom is irreconcilable with the judicial obligation to interpret the statute that Congress actually enacted"). Although the District Court relied heavily on that past practice, *see* ROA.2294–95, DOL now concedes it's not "independently sufficient to justify" the tiebreaker provision. Resp.Br.39. That history is only "relevant," according to DOL, in determining whether the tiebreaker provision involves a major question. Resp.Br.39–

40. As explained above, the major-questions doctrine applies. *See* Part I.A.4, *supra*.

## C. DOL Abandons *Chevron* Deference.

Although the District Court relied on *Chevron* to uphold the 2022 Rule, DOL does not ask for that deference here. Resp.Br.40–41. That is the end of the matter, and this Court should "decline to consider whether any deference might be due." *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2180 (2021) (cleaned up); *Cargill v. Garland*, 57 F.4th 447, 465 (5th Cir.) (en banc) ("*Chevron* does not apply for the simple reason that the Government does not ask us to apply it."), *cert. granted*, 144 S. Ct. 374 (2023).

## II. THE 2022 RULE IS ARBITRARY AND CAPRICIOUS.

The 2022 Rule is also not "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021); *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). It relies on inconsistent and unreasonable logic and improper factors, while ignoring important aspects of the problem and its own prior factual findings.

Judges "are not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575–76 (2019) (cleaned up). President Biden directed DOL to consider "suspending, revising, or rescinding" the 2020 Rules because they presented obstacles to his ESG and climate policy objectives. Exec. Order No. 13990, § 2, 86 Fed. Reg. 7,037, 7,037 (Jan. 15, 2021); *see* Op.Br.16–18. DOL answered that call. The common theme throughout the 2022 Rule is relaxing restrictions on ESG considerations and reducing oversight of fiduciaries at every turn, not protecting the financial interests of retirement plan participants and beneficiaries.

DOL's responses are unpersuasive.

## A. The 2022 Rule Is Internally Inconsistent and Unreasonable.

The 2022 Rule is internally inconsistent. Op.Br.51–52. It recognizes that "no two investments are the same in each and every respect," but then claims fiduciaries need (an expanded) tiebreaker to choose between equivalent investments. 87 Fed. Reg. at 73,836. Investments can either always be differentiated or not, but the 2022 Rule tries to have it both ways.

DOL insists there's no inconsistency because investment options can, accordingly to the 2022 Rule, "serve the financial interests of the plan equally well" despite having a wide range of differences. Resp.Br.42 (quoting 87 Fed. Reg. at 73,837). That misses the point. The tiebreaker provision in the 2020 Rules applied only when fiduciaries are "unable to distinguish on the basis of *pecuniary* factors alone." 85 Fed. Reg. at 72,884 (emphasis added). Perhaps under that definition, DOL could have consistently said that a tiebreaker is necessary because, by definition, no financial—i.e., no *pecuniary*—consideration could distinguish the investments.

The 2022 Rule, however, concluded that definition was "impractical and unworkable" and moved to ensure that even investments that "differ in a wide range of attributes" can be considered tied. 87 Fed. Reg. at 73,836. But when two investments "differ in a wide range of attributes," investors will surely be able to choose between them based on *financial* considerations, even if the fiduciary thinks they might equally serve the plan. *See* Part I.A, *supra*. Fiduciaries can make a financially oriented decision without recourse to views about what is best for society, which defeats the justification for the tiebreaker.

It is particularly telling that DOL introduced the tiebreaker principle because fiduciaries *wanted* to pursue social investing. *See, e.g.*, IB 94-1, 59 Fed. Reg. 32,606, 32,607–08 (June 23, 1994). It wasn't born out of necessity. Forbidding collateral tiebreakers outright will not harm participants, whereas adding *any* form of tiebreaker at least introduces the risk of harm. That tradeoff is irrational. Plan participants, who ERISA was designed to protect, do not benefit from a tiebreaker rule.

It was also unreasonable to conclude the best way to advance the "fundamental principle *Dudenhoeffer* expressed" was to delete the language *Dudenhoeffer* used to articulate that principle. *See* Op.Br.51–52. The 2020 Rules quoted *Dudenhoeffer* for the proposition that fiduciaries must choose investments and exercise shareholder rights based solely on "pecuniary factors." 85 Fed. Reg. at 72,846, 72, 884; 85 Fed. Reg. at 81,658, 81,694. The 2022 Rule replaced that standard with a requirement that investment decisions "must be based on factors that the fiduciary reasonably determines are relevant to a risk and return analysis." 87 Fed. Reg. at 73,885.

DOL responds that the reference in the 2020 Rules (and thus *Dudenhoeffer*) to "pecuniary factors" was confusing and might have

chilled the consideration of ESG factors, even when relevant to the risk-return analysis. Resp.Br.42–43. But if the Court's interpretation of ERISA truly caused confusion, DOL could have explained that "pecuniary" factors include considerations relevant to the risk-return analysis. In fact, the 2020 Rules already did that. 85 Fed. Reg. at 72,851.

Instead, DOL replaced the Supreme Court's clear (and authoritative) interpretation of ERISA with a mealy-mouthed formulation that implies *non*-pecuniary factors can be considered and is thus prone to misapplication and manipulation. This betrays that DOL's intent is not to faithfully apply ERISA as interpreted in *Dudenhoeffer*, but to subvert it and expand the use of collateral considerations like ESG.

### B. The 2022 Rule Considered Improper Factors.

The 2022 Rule considered numerous improper factors. Op.Br.53–56. First, DOL made it easier for fiduciaries to declare ties, even though nothing in ERISA supports that end. Op.Br.53–54. DOL says this misstates its rationale because the 2022 Rule did not "expand the scope of the tiebreaker standard beyond" "true ties," as the 2022 Rule now defines them. Resp.Br.43–44. That doesn't matter because the reasons it did so were still improper.

DOL's shift from "unable to distinguish on the basis of pecuniary factors alone" in the 2020 Rules to "serve the financial interests of the plan equally well" in the 2022 Rule undeniably expands the scope of the tiebreaker provision. Op.Br.53; Sen.Hughes.Amicus.Br.9 & n.26 (collecting sources). DOL made the change to lighten the burden on fiduciaries who complained the limitation to pecuniary factors in the 2020 Rules was "impractical and unworkable," "unrealistically difficult and prohibitively stringent," and "rare and unreasonably difficult to identify." 87 Fed. Reg. at 73,835–36. But nothing in ERISA authorizes DOL to regulate in pursuit of making ties *easier* to identify, especially when ties are the predicate for considering collateral factors Congress has otherwise ruled out.

Moreover, if the tiebreaker applies even when fiduciaries could distinguish the investments on financial factors, the tiebreaker is not truly necessary. *See* Parts I.A, II.A, *supra*. DOL expanded the definition of a "tie" to justify more tiebreakers.

Second, the 2022 Rule removed documentation requirements that protected participants from collateral considerations. The 2020 Rules required fiduciaries who invoked the tiebreaker provision to document

why pecuniary factors alone were insufficient and why relying on non-pecuniary factors supported the plan's interests. *See* 85 Fed. Reg. at 72,851. This also gave notice to participants that a collateral consideration was used. The 2022 Rule removed that requirement. Op.Br.54–56.

DOL suggests that its intent was not to shield fiduciaries from healthy scrutiny, but instead avoid litigation that might discourage fiduciaries from pursuing financial returns. Resp.Br.44. But that's not what DOL said in the 2022 Rule, where it explained its concern was the documentation requirement would "chill and discourage plan fiduciaries from *using the tiebreaker* test generally, including in cases involving the appropriate consideration of ESG factors (when such factors are not otherwise relevant to a risk and return analysis)." 87 Fed. Reg. at 73,838 (emphasis added). The concern was expanding ESG considerations, not ensuring faithful pursuit of financial returns. DOL wanted to avoid "imposing further burdens" on the use of tiebreakers and remove anything to suggest they "occur[] infrequently." *Id. Nothing* in ERISA authorizes DOL to regulate in pursuit of encouraging use of the tiebreaker provision.

DOL also worried that the documentation requirement would "direct[] potential litigants' attention to tie-breaker decisions as inherently problematic." *Id.* But non-pecuniary tiebreakers *are* "inherently problematic" because they invoke collateral considerations nowhere authorized (indeed, expressly prohibited) by ERISA. DOL did not want fiduciaries to fear scrutiny of their decision to invoke the tiebreaker provision because DOL wanted it invoked more often. That is not an objective it was authorized to pursue under ERISA.

DOL also reasoned that excess documentation would actually hurt participants because they would ultimately bear the increased administrative costs. Resp.Br.44–45. Whatever the merit of that consideration, it cannot excuse the 2022 Rule's clear emphasis on shielding fiduciaries. *See* 87 Fed. Reg. at 73,838; *State Farm Mut. Auto. Ins.*, 463 U.S. at 43; *Luminant Generation Co., LLC v. EPA*, 675 F.3d 917, 926–27, 930–32 (5th Cir. 2012). And regardless, the 2022 Rule did not rebut the 2020 Rules' finding that documentation costs were easily justified by "the gains to investors" that would accrue because of enhanced fiduciary oversight. 85 Fed. Reg. at 72,872, 72,874–75.

DOL simultaneously declined to adopt in the 2022 Rule its proposal to require fiduciaries to disclose "the collateral-benefit characteristic of [any] fund, product, or model portfolio" selected based on that consideration for inclusion in a participant-directed individual account plan. 87 Fed. Reg. at 73,839–41. Again, DOL did so to shield fiduciaries from healthy scrutiny of their "non-financial motives." Op.Br.55–56 (quoting 87 Fed. Reg. at 73,840). DOL doesn't deny the charge, but instead emphasizes that it also considered a related rulemaking by the Securities and Exchange Commission and a "range of concerns expressed by commenters," some of which were appropriate factors. Resp.Br.45–46. That does not excuse DOL's reliance on improper factors. *Luminant*, 675 F.3d at 930. And it reinforces DOL's objective to expand the use of collateral considerations with limited oversight.

### C. The 2022 Rule Failed to Consider Important Aspects of the Problem or Justify the Agency's Departure from Past Factual Findings.

The 2022 Rule also failed to consider an important aspect of the problem. By increasing flexibility for fiduciaries, removing documentation requirements, and rescinding clear statements of fiduciary duties and a prophylactic limitation on QDIAs, sponsors and

participants will need to expend additional resources to monitor fiduciaries. Op.Br.56–58; *see also* NFIB.Amicus.Br.11–17.

DOL points to its assertions in the rulemaking that fiduciaries "'remain subject to ERISA's prudence requirements'" and cannot subordinate financial returns to collateral considerations. Resp.Br.46. In other words, participants do not need to worry about monitoring fiduciaries because ERISA's fiduciary duties apply.

That's a non-sequitur. ERISA facilitates oversight precisely because it is necessary to ensure that fiduciaries meet those duties. 29 U.S.C. § 1001(a). The duty of loyalty also prefers clear, prophylactic rules in the first instance to "remove altogether the occasions of temptation rather than to monitor fiduciary behavior and attempt to uncover and punish abuses when a trustee has actually succumbed to temptation." Restatement (Third) of Trusts § 78 cmt. b. The 2022 Rule defeats those goals by adopting malleable, less-enforceable standards and then deprives participants of documentation needed to engage in proper oversight. "Just trust them" is not how ERISA works.

DOL now contends that no comment presented this concern during the rulemaking, which, according to DOL, precludes raising it now.

Resp.Br.46–47. That argument is foreclosed by this Court's precedent. *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1022 n.23 (5th Cir. 2019). DOL also forfeited that argument by failing to raise it below. *Treme v. St. John the Baptist Par. Council*, 93 F.4th 792, 799 n.6 (5th Cir. 2024).

In any event, DOL did receive comments that "the NPRM does not even acknowledge the costs to workers of losing the 2020 Rules' protections and the upending of their decades of settled expectations about how pension plans work." ROA.375. Those comments further specified that when workers realize that their money might be "used for wholesale advancement of causes they strongly oppose" it might "undermine willingness to participate in pension plans." ROA.398.

Finally, the 2022 Rule never confronted the 2020 Rules' factual finding that ESG investing had led to "shortcomings in the rigor of the prudence and loyalty analysis." Op.Br.58–59 (quoting 85 Fed. Reg. at 72,847, 72,850). DOL responds that the 2022 Rule itself was responding to shortcomings in the duty of loyalty, and thus does not rest on repudiating that factual finding. Resp.Br.47–48.

That's a red herring. The 2020 Rules determined that ESG investing was undermining the duties of loyalty and prudence. DOL thus

tightened the scope of the tiebreaker provision and added other safeguards around social investing. 85 Fed. Reg. at 72,847, 72,850. But the 2022 Rule reversed course, expanding the tiebreaker provision and removing other safeguards. To reasonably do so, DOL needed to conclude that either (1) the risk of fiduciary breaches had abated, that fiduciaries would in fact honor their duty of loyalty; or (2) those concerns were outweighed by the considerations in the new policy.

Neither did the 2022 Rule rebut the finding that documentation costs were easily justified by "the gains to investors" that would accrue because of enhanced fiduciary oversight. 85 Fed. Reg. at 72,872, 72,874–75; *see* Part II.B, *supra*.

Because such conclusions would represent "factual findings that contradict those which underlay its prior policy," DOL needed to provide a "detailed justification." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). The 2022 Rule never did so.

## III. VACATUR IS APPROPRIATE.

If the 2022 Rule is held invalid, DOL asks this Court to remand for the District Court to craft plaintiff-specific relief. Resp.Br.48–50. That is not the law in this Circuit—"the default rule is that vacatur is the

appropriate remedy." *Data Mktg. P'ship, LP v. DOL*, 45 F.4th 846, 859 (5th Cir. 2022); *see, e.g.*, *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 & n.29 (5th Cir. 2022) ("Vacatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation."). And DOL's "protests against nationwide relief are incoherent in light of its use of the [2022] Rule[s] to prescribe uniform federal standards." *Career Colls. & Schs. of Tex.*, __ F.4th __, 2024 WL 1461737, at *26.

It is also not possible to craft particularized relief here. Courts "may administer complete relief between the parties, even [if] this involves the determination of legal rights which otherwise would not be within the range of its authority." *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928); *see also Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291–92 (1960). Indeed, while the U.S. Solicitor General's Office has recently disputed that vacatur is proper under the Administrative Procedure Act, it concedes that "where the only way to give the party before the court relief is vacatur, that … would be consistent with traditional equitable considerations in a way that providing vacatur in other cases is not." Oral Argument Transcript at 76, *Corner Post v. Bd.*

*of Governors of the Fed. Rsrv. Sys.*, No. 22-1008 (U.S. Supreme Court) (argued Feb. 20, 2024).

Providing complete relief even to just the private parties requires vacatur. Liberty Energy Inc. ("Liberty") and the energy companies comprising Western Energy Alliance, ROA.508–13, Sgamma Decl. ¶¶ 4–21, are harmed by the ability of fiduciaries to use ESG considerations and steer investments away from disfavored energy companies, raising their cost of capital. Op.Br.60–61. Plan fiduciaries also have increased latitude to engage these companies on collateral ESG considerations and vote plan assets in support of such proposals, inviting activists to wage costly proxy campaigns that divert corporate focus from maximizing shareholder value. Op.Br.61; *see* Sen.Hughes.Amicus.Br.25–28.

DOL has never disputed those injuries, which can only be remedied through vacatur because *any* fiduciary might make choices affecting these companies. The private plaintiffs also use fiduciaries that rely on the 2022 Rule but are not before this Court, again making vacatur a necessary remedy. And patchwork application of the 2022 Rule would result in chaos. *Cf. City of Chicago v. Barr*, 961 F.3d 882, 916 (7th Cir.

2020) ("A nationwide injunction may be warranted where it is necessary to provide complete relief to the plaintiffs, to protect similarly situated nonparties, or to avoid the chaos and confusion of a patchwork of injunctions." (cleaned up)).

The appropriateness of vacatur is even more obvious here given that the States themselves also have standing, and their injuries likewise cannot be fully remedied absent vacatur. Op.Br.59–62.

DOL finally emphasizes that the 2022 Rule contains a severability provision. Resp.Br.50–51. DOL's inconsistent and unreasonable logic, improper objectives, and failure to consider oversight burdens or repudiate factual findings in the 2020 Rules, pervade the entire 2022 Rule and make it arbitrary and capricious. *See* Part II, *supra*. The whole 2022 Rule must therefore be set aside.

## IV. THE COURT SHOULD NOTE DOL'S CONCESSIONS.

In the event this Court does not vacate the entire 2022 Rule, it should hold DOL to the concessions made in this litigation. First, DOL concedes that fiduciaries must first seek to diversify investment options before even considering the use of collateral considerations as a tiebreaker. Resp.Br.32 & n.4.

Second, DOL emphasizes the similarities between the 2022 Rule and the 2020 Rules, Resp.Br.27–28, and claims the 2022 Rule did not expand the tiebreaker beyond "true ties," but only "explain[ed] how the statutory duties apply *in the case of true ties*," Resp.Br.43. As Senator Hughes pointed out, many stakeholders do not read the rule that way. *See* Sen.Hughes.Amicus.Br.9 & n.26.

Third, DOL clarifies that, even absent the documentation requirements in the 2020 Rules, the "duty of prudence separately obligates fiduciaries to document any investment decision to the extent appropriate under the circumstances," and suggests that documentation of tiebreaker decisions should be "common practice." Resp.Br.45 n.6 (cleaned up).

Any opinion of this Court should ensure these concessions are not just a "'convenient litigating position.'" *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019).

## CONCLUSION

This Court should reverse the District Court and remand with instructions to vacate the 2022 Rule.

Dated: April 11, 2024

Respectfully submitted,

/s/ Stanford E. Purser
SEAN REYES
Attorney General
STANFORD E. PURSER
Utah Solicitor General

Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
spurser@agutah.gov

BRUNN (BEAU) ROYSDEN
Fusion Law, PLLC
7600 N. 15th Street, Suite 150
Phoenix, AZ 85020
(602) 315-7545
beau@fusion.law

*Counsel for State of Utah*

/s/ Neville Hedley
NEVILLE HEDLEY
ANNA ST. JOHN
Hamilton Lincoln Law Institute
1629 K Street NW, Suite 300
Washington, DC 20006
(917) 327-2392
ned.hedley@hlli.org
anna.stjohn@hlli.org

*Counsel for James R. Copland and*
*Alex L. Fairly*

/s/ Jonathan Berry
JONATHAN BERRY
 *Counsel of Record*
R. TRENT MCCOTTER
MICHAEL BUSCHBACHER
JARED M. KELSON
ANDREW W. SMITH

Boyden Gray PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
(202) 955-0620
jberry@boydengray.com

*Counsel for Liberty Energy Inc.,*
 *Liberty Oilfield Services LLC,* and
 *Western Energy Alliance*

/s/ Monroe David Bryant
KEN PAXTON
Attorney General
BRENT WEBSTER
First Assistant Attorney General
RALPH MOLINA
Deputy Attorney General for Legal
   Strategy
MONROE DAVID BRYANT
ZACHARY BERG
Special Counsels

Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2547
(512) 936-1700
brent.webster@oag.texas.gov
ralph.molina@oag.texas.gov
david.bryant@oag.texas.gov
zachary.berg@oag.texas.gov

*Counsel for State of Texas*

/s/ Kevin M. Gallagher
JASON MIYARES
Attorney General
KEVIN M. GALLAGHER
Principal Deputy Solicitor General

Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
kgallagher@oag.state.va.us

*Counsel for Commonwealth of*
*  Virginia*

/s/ Morgan Brungard
LIZ MURRILL
Attorney General
BEN AGUINAGA
Solicitor General
TRACY SHORT
Assistant Chief Deputy Attorney
   General
MORGAN BRUNGARD
Deputy Solicitor General

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
murrille@ag.louisiana.gov
aguinagab@ag.louisiana.gov
shortt@ag.louisiana.gov
brungardm@ag.louisiana.gov

*Counsel for State of Louisiana*

/s/ Edmund LaCour
STEVE MARSHALL
Attorney General
EDMUND LACOUR
Solicitor General

Alabama Attorney General's Office
501 Washington Ave
Montgomery, AL 36014
(334) 353-2196
edmund.lacour@alabamaag.gov

*Counsel for State of Alabama*

/s/ Benjamin Hofmeister
TREG TAYLOR
Attorney General
JEFFREY G. PICKETT
Senior Assistant Attorney General
BENJAMIN HOFMEISTER
Assistant Attorney General

Alaska Department of Law
123 4th Street
Juneau, AK 99801
(907) 269-5275
jeff.pickett@alaska.gov
ben.hofmeister@alaska.gov

*Counsel for State of Alaska*

/s/ Dylan Jacobs
TIM GRIFFIN
Attorney General
NICHOLAS J. BRONNI
Solicitor General
DYLAN JACOBS
Deputy Solicitor General

Arkansas Attorney General's
   Office
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007
nicholas.bronni@arkansasag.gov
dylan.jacobs@arkansasag.gov

*Counsel for State of Arkansas*

/s/ Henry C. Whitaker
ASHLEY MOODY
Attorney General
HENRY C. WHITAKER
Solicitor General

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, FL 32399-1050
(850) 414-3300
henry.whitaker@myfloridalegal.com

*Counsel for State of Florida*

/s/ Stephen J. Petrany
CHRISTOPHER M. CARR
Attorney General
STEPHEN J. PETRANY
Solicitor General
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for State of Georgia*

/s/ Josh Turner
RAÚL R. LABRADOR
Attorney General
ALAN HURST
Solicitor General
JOSH TURNER
Chief of Constitutional Litigation
   and Policy

Idaho Attorney General's Office
700 W. Jefferson Street, Suite 210
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-2400
josh.turner@ag.idaho.gov

*Counsel for State of Idaho*

/s/ Eric H. Wessan
BRENNA BIRD
Attorney General
ERIC H. WESSAN
Solicitor General

Iowa Attorney General's Office
1305 E. Walnut Street
Des Moines, IA 50319
(515) 281-5164
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*

/s/ James A. Barta
THEODORE E. ROKITA
Attorney General
JAMES A. BARTA
Solicitor General

Indiana Attorney General's Office
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-6255
james.barta@atg.in.gov

*Counsel for State of Indiana*

/s/ Anthony J. Powell
KRIS W. KOBACH
Attorney General
ANTHONY J. POWELL
Solicitor General
JESSE A. BURRIS
Assistant Attorney General

Kansas Attorney General's Office
120 SW 10th Ave, 2nd Floor
Topeka, KS 66612
(785) 296-2215
anthony.powell@ag.ks.gov
jesse.burris@ag.ks.gov

*Counsel for State of Kansas*

/s/ Matthew F. Kuhn
RUSSELL COLEMAN
Attorney General
MATTHEW F. KUHN
Solicitor General
LINDSEY KEISER
Assistant Attorney General

Kentucky Attorney General's Office
700 Capital Avenue, Suite 118
Frankfort, KY
(502) 696-5478
matt.kuhn@ky.gov
lindsey.keiser@ky.gov

*Counsel for Commonwealth of Kentucky*

/s/ Justin L. Matheny
LYNN FITCH
Attorney General
JUSTIN L. MATHENY
Deputy Solicitor General

Mississippi Attorney General's Office
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

/s/ Joshua M. Divine
ANDREW BAILEY
Attorney General
JOSHUA M. DIVINE
Solicitor General
MARIA A. LANAHAN
Deputy Solicitor General

Missouri Attorney General's Office
P.O. Box 899
Jefferson City, MO 65102
(573) 751-3321
josh.divine@ago.mo.gov
maria.lanahan@ago.mo.gov

*Counsel for State of Missouri*

/s/ Christian B. Corrigan
AUSTIN KNUDSEN
Attorney General
CHRISTIAN B. CORRIGAN
Solicitor General

Montana Department of Justice
215 N. Sanders St
Helena, MT 59601
(406) 444-2707
christian.corrigan@mt.gov

*Counsel for State of Montana*

/s/ Eric J. Hamilton
MICHAEL T. HILGERS
Attorney General
ERIC J. HAMILTON
Solicitor General

Nebraska Attorney General's
   Office
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for State of Nebraska*

/s/ Mark W. Dell'Orfano
JOHN M. FORMELLA
Attorney General
MARK W. DELL'ORFANO
Assistant Attorney General

New Hampshire Department of
   Justice
1 Granite Place
Concord, NH 03301
(603) 271-3650
mark.w.dellorfano@doj.nh.gov

*Counsel for State of New
   Hampshire*

/s/ Phillp Axt
DREW H. WRIGLEY
Attorney General
PHILIP AXT
Solicitor General

North Dakota Attorney General's
   Office
600 E Boulevard Ave, Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.govctitus@nd.gov

*Counsel for State of North Dakota*

/s/ T. Elliot Gaiser
DAVE YOST
Attorney General
T. ELLIOT GAISER
Solicitor General
MATHURA J. SRIDHARAN
Deputy Solicitor General

Ohio Attorney General's Office
30 E. Broad St, 17th Fl.
Columbus, OH 43215
(614) 728-7511
thomas.gaiser@OhioAGO.gov
mathura.sridharan@OhioAGO.gov

*Counsel for State of Ohio*

/s/ Garry M. Gaskins, II
GENTNER F. DRUMMOND
Attorney General
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation

Oklahoma Attorney General's
  Office
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov
zach.west@oag.ok.gov

*Counsel for State of Oklahoma*

/s/ Thomas T. Hydrick
ALAN WILSON
Attorney General
THOMAS T. HYDRICK
Assistant Deputy Solicitor General

South Carolina Attorney General's
  Office
Post Office Box 11549
Columbia, SC 29211
(803) 734-4127
thomashydrick@scag.gov

*Counsel for State of South Carolina*

/s/ Gabriel Krimm
JONATHAN SKRMETTI
Attorney General and Reporter
GABRIEL KRIMM
Assistant Solicitor General

Office of the Attorney General and
  Reporter of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207
(615) 532-5596
gabriel.krimm@ag.tn.gov

*Counsel for State of Tennessee*

/s/ Lindsay S. See
PATRICK MORRISEY
Attorney General
LINDSAY S. SEE
Solicitor General
MICHAEL R. WILLIAMS
Principal Deputy Solicitor General

West Virginia Attorney General's
  Office
State Capitol Complex, Bldg 1,
Rm E-26
1900 Kanawha Blvd. E
Charleston, WV 25305
(681) 313-4550
lindsay.s.see@wvago.gov
michael.r.williams@wvago.gov

*Counsel for State of West Virginia*

/s/ Ryan Schelhaas
BRIDGET HILL
Attorney General
RYAN SCHELHAAS
Chief Deputy Attorney General

Office of the Wyoming Attorney
   General
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for State of Wyoming*

F. SCOTT FLOW
Flow Law Firm, PLLC
800 SW 9th Avenue
Amarillo, Texas 79101-3206
(806) 372-2010
fsflow@flowlaw.com

*Co-Counsel for Appellants Except
   States of Texas, Tennessee*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2024, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.


Dated: April 11, 2024               /s/ Jonathan Berry
                                    Jonathan Berry

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fifth Circuit Rule 32 and Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,423 words, excluding the portions exempted by Rule 32(f). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

Dated: April 11, 2024                     /s/ Jonathan Berry
                                             Jonathan Berry