United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
July 18, 2024
Lyle W. Cayce
Clerk

No. 23-11097

State of Utah; State of Texas; Commonwealth of Virginia; State of Louisiana; State of Alabama; State of Alaska; State of Arkansas; State of Florida; State of Georgia; State of Indiana; State of Idaho; State of Iowa; State of Kansas; Commonwealth of Kentucky; State of Mississippi; State of Missouri; State of Montana; State of Nebraska; State of New Hampshire; State of North Dakota; State of Ohio; State of South Carolina; State of Tennessee; State of West Virginia; State of Wyoming; Liberty Energy, Incorporated; Liberty Oilfield Services, L.L.C.; Western Energy Alliance; James R. Copland; Alex L. Fairly; State of Oklahoma,

*Plaintiffs—Appellants,*

versus

Julie A. Su, *Acting Secretary, U.S. Department of Labor*; United States Department of Labor,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:23-CV-16

Before Haynes,[*] Willett, and Oldham, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

Presidents exiting and entering the White House are prone to issuing whipsawing pronouncements. This case pits an outgoing president's "midnight regulation" against an incoming president's "day one executive order" and poses a weighty question: Does ERISA allow retirement plan managers to consider factors that are not material to financial performance when making investment decisions affecting workers' retirement savings?

We do not venture an answer—at least not yet. This case, while featuring two administrations' ping-ponging directives, turns fundamentally on the words that Congress chose: What investment duties does ERISA prescribe and proscribe for plan fiduciaries? In upholding the Department of Labor's reading, the district court relied upon the decades-old *Chevron* deference doctrine. But eleven days before we heard oral argument in this appeal, the Supreme Court decided two landmark cases—*Loper Bright Enterprises v. Raimondo* and *Relentless, Inc. v. Department of Commerce*[1]—that discarded *Chevron* and pared back agencies' leeway to interpret their own statutory authority. Given the upended legal landscape, and our status as a court of *re*view, not first view, we vacate and remand so that the district court can reassess the merits.

\* \* \*

On Inauguration Day 2021, President Biden signed a flurry of executive orders, including one meant to neutralize a Department of Labor

---

[*] Judge Haynes concurs in the judgment only.

[1] 144 S. Ct. 2244 (2024).

rule that had taken effect eight days earlier.[2] That Trump-era rule—"Financial Factors in Selecting Plan Investments"—forbade ERISA fiduciaries from considering "non-pecuniary" factors when making investment decisions.[3] The Biden order—"Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis"—counteracted the Trump rule by, among other things, directing the Department of Labor to reexamine the Financial Factors Rule that had eschewed so-called "political investing" and directed ERISA retirement fund managers to consider solely economic factors that materially affect financial risk or return.[4]

Ten months after President Biden's day-one executive order, the Department of Labor released a final rule that attempts to guide ERISA fiduciaries on when they may consider "collateral benefits" when making investment decisions on behalf of the pension plans they manage.[5] According to the rule, an ERISA fiduciary may consider "the economic effects of climate change and other environmental, social, or governance factors" in the event that competing investment options "equally serve the financial interests of the plan."[6] Simply put: the Department's rule permits ERISA

---

[2] *See* Executive Order 13990 of January 20, 2021, 86 Fed. Reg. 7,037 (Jan. 25, 2021).

[3] 85 Fed. Reg. 72846 (Nov. 13, 2020).

[4] *See supra*, note 2, at § 2 (directing agency heads to consider "suspending, revising, or rescinding" any agency actions taken during the Trump Administration "that are or may be inconsistent with . . . the policy set forth in section 1 of this order"); *see also* White House, *Fact Sheet: List of Agency Actions for Review* (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/fact-sheet-list-of-agency-actions-for-review/ (listing, under the Department of Labor, "Financial Factors in Selecting Plan Investments, 85 Fed. Reg. 72846 (Nov. 13, 2020)).

[5] 29 C.F.R. § 2550.404a-1(c)(2).

[6] *Id.*; *id.* § 2550.404a-1(b)(4).

fiduciaries to consider ESG objectives when there is a purported "tie" between two or more investment options.[7]

A group of plaintiffs consisting of various states, corporations, trade associations, and individuals quickly challenged the rule, arguing that it was not only inconsistent with the plain text of ERISA but also arbitrary and capricious under the Administrative Procedure Act. Plaintiffs sought vacatur under 5 U.S.C. § 706(2). The district court, however, rejected their challenge, opting to defer to the Department's interpretation of ERISA under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*[8] "[A]fter affording [the Department] the deference it is presently due under *Chevron*," the district court reasoned, "the Court cannot conclude that the Rule is 'manifestly contrary to the statute.'"

Plaintiffs timely appealed. While the appeal was pending before this court, the Supreme Court decided two consolidated cases—*Loper Bright Enterprises v. Raimondo* and *Relentless, Inc. v. Department of Commerce*[9]—in which the Court overruled *Chevron*, holding that the deference it prescribed could not be reconciled with either the APA or the independent role of the federal courts in our system of separated powers.

Notably, even before the Supreme Court issued *Loper Bright*, the Department presciently disclaimed reliance on *Chevron* in its briefing, arguing instead that the district court's judgment could and should be affirmed even without any deference. Thus, perhaps unsurprisingly, the

---

[7] Congress overturned the Department's rule by statute, *see* H.R.J. Res. 30, 118th Cong. (2023), but President Biden vetoed the bill, the first veto of his presidency, *see* Veto Message on H.J. Res. 30 (Mar. 21, 2023).

[8] 467 U.S. 837 (1984).

[9] 144 S. Ct. 2244 (2024).

decision had little effect on the parties' arguments before us. Each maintained that they had the best reading of ERISA, both in their briefing and in their Rule 28(j) letters, and each continued to press their respective positions during oral argument.

Neither party, however, suggested that we ought to adhere to our normal (though not absolute) practice when intervening Supreme Court precedent affects a case pending before us on direct appeal: that is, vacate the judgment below and remand for reconsideration in light of the new decision. The federal reporter teems with such dispositions, both from our circuit and others.[10]

---

[10] *E.g.*, *Vicknair v. Formosa Plastics Corps.*, 98 F.3d 837, 839 (5th Cir. 1996) ("We conclude that the Louisiana Supreme Court's recent announcement of a major change in the law that governs the principal issue here on appeal makes prudent a vacatur of the district court's summary judgment and remand for reconsideration in light of that law change."); *Harrison v. Dyson*, 492 F.2d 1162, 1163 (5th Cir. 1974) (vacating and remanding because the district court had "dismissed on the authority of" a case that the Supreme Court overruled); *Rent-A-Center Inc. v. Barker*, 306 Fed. App'x 853, 854 (5th Cir. 2009) (vacating and remanding in light of a new Supreme Court decision); *Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1390 (5th Cir. 1982) (vacating and remanding for the district court to consider new authority from the Texas Supreme Court in a diversity case); *Satcher v. Honda Motor Co.*, 993 F.2d 56, 57–58 (5th Cir. 1993) (vacating and remanding for reconsideration in light of new statutory changes); *see also, e.g.*, *Jackson v. Crosby*, 437 F.3d 1290, 1294 (11th Cir. 2006) ("Normally, when reviewing on direct appeal a ruling relying substantially upon precedent later overruled by the Supreme Court, we . . . simply remand the case to the district court for reconsideration in light of the intervening Supreme Court decision."); *Henderson v. Henderson*, 535 F.2d 1399, 1399 (2d Cir. 1976) (vacating and remanding to the district court in light of a new Supreme Court decision); *Younger v. Glamorgan Pipe & Foundry Co.*, 561 F.2d 563, 565 (4th Cir. 1977) (same); *United States v. Porter*, 347 F.2d 940, 941 (6th Cir. 1965) (same); *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012) (same).

Relatedly, we are aware of at least one case in which one of our sister circuits addressed the merits of a dispute despite noting that *Chevron* had been overruled while the case was pending on direct appeal. *See CFPB v. Townstone Fin., Inc.*, ___ F.4th ___, 2024 WL 3370023, at *5 n.15 (7th Cir. July 11, 2024). The Seventh Circuit was free to do so, of course, but unlike this case, the district court there had concluded that deference was

No. 23-11097

This modest and relatively uncontroversial[11] practice is a basic feature of our judicial hierarchy, and it reflects at least two premises implicit in our legal system: first, that changes in precedent generally apply to cases pending on appeal[12]; and second, that appellate courts generally sit as courts "of review, not first view."[13] The first premise, while easily stated, has not been easily applied,[14] and exploring its complexities is not a worthwhile investment for purposes of this case.

While premise one is largely guided by principles of law, premise two is largely guided by principles of prudence, and its applicability is discretionarily applied on a case-by-case basis. Nothing in Article III or elsewhere affirmatively prohibits us, as a court of appeals, from answering legal questions in the first instance. But we seldom do so, opting to break out of our appellate mold only when, for example, a failure to address the issue

---

unwarranted because the statute was unambiguous under *Chevron* step one. *See CFPB v. Townstone Fin., Inc.*, 2023 WL 1766484, at *5 (N.D. Ill. Feb. 3, 2023).

[11] *But see* Aaron-Andrew P. Bruhl, *The Supreme Court's Controversial GVRs—and an Alternative*, 107 MICH. L. REV. 711, 735–36 (2009).

[12] *See* RICHARD FALLON, ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1292 (7th ed. 2015) ("Traditionally, judicial decisions, no matter how novel, apply retroactively to the parties in the litigation and to other litigants in all pending cases that have not yet become 'final' on direct review.").

[13] *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 957 (5th Cir. 2024) (quotations omitted).

[14] *Compare Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 240 (1995) (holding that a statute which reopened a federal court's final judgment that had been entered before the statute's enactment was unconstitutional on separation-of-powers grounds), *with Miller v. French*, 530 U.S. 327, 344–45 (2000) (holding that "[p]rospective relief under a continuing, executory decree remains subject to alteration due to changes in the underlying law"). And there is also, of course, the intractably complicated issue of whether changes in the law apply retroactively to, for example, pending cases posing collateral attacks on convictions. *See, e.g.*, *Ramos v. Louisiana*, 590 U.S. 83, 110 (2020).

would "lead to an incorrect result or a miscarriage of justice."[15] Exploring ground not yet trodden by the district court thus remains the narrow exception, and for good reason. Without the benefit of the considered judgment of our esteemed colleagues on the district courts, we would arguably be no better positioned to answer the questions presented by the parties' dispute,[16] and the law-declaration function that is necessarily incident to our appellate review would naturally deteriorate as a result.

Judicial humility thus entails not only the occasional recognition of a wrong decision, as the Supreme Court's opinion in *Loper Bright* readily illustrates,[17] but also *when* to make that decision in the first place.[18] Merely because we have a mandatory appellate docket does not ineluctably require

---

[15] *Murray v. Anthony J. Bertucci Constr. Co.*, 958 F.2d 127, 128 (5th Cir. 1992).

[16] *Cf. Maslenjak v. United States*, 582 U.S. 335, 354 (2017) (GORSUCH, J., concurring in part and concurring in the judgment) ("[T]he crucible of adversarial testing on which we usually depend, along with the experience of our thoughtful colleagues on the district and circuit benches, could yield insights (or reveal pitfalls) we cannot muster guided only by our own lights.").

[17] *See Loper Bright*, 144 S. Ct. at 2272 ("And part of judicial humility . . . is admitting and in certain cases correcting our own mistakes . . . ."); *see also Doe v. Mckesson*, 945 F.3d 818, 835 (5th Cir. 2019) (WILLETT, J., concurring in part, dissenting in part) ("Admittedly, judges aren't naturals at backtracking or about-facing. But I do so forthrightly. Consistency is a cardinal judicial virtue, but not the only virtue. In my judgment, earnest rethinking should underscore, rather than undermine, faith in the judicial process.").

[18] *See, e.g.*, *Hensley v. State Comm'n of Jud. Conduct*, ___ S.W.3d ___, 2024 WL 3210043, at *17 (Tex. 2024) (YOUNG, J., concurring) ("[W]hile I agree that this Court has the discretion to reach the merits now, there is a virtue in allowing the process to unfold, with this Court being the last rather than the first to address important legal questions. What may seem prudent from the vantage point of one single case might be less so when viewed from the perspective of the system as a whole." (internal citation omitted)).

us to be the first mover on a disputed issue, especially one of national significance.[19]

This is not to suggest that vacating and remanding in light of intervening precedent is without its drawbacks. Repeatedly reciting "the 'court of review' mantra" can understandably give parties the impression that we are just "kicking the can down the road."[20] There is also something to be said of the judicial economy and efficiency lost by not forging ahead and providing the parties the swift resolution they seek.

Yet efficiency and economy—valuable, no doubt—have never been pursued at all costs, at least in our legal system. The Constitution's promises of due process and a jury trial, for example, are not exactly tools of expedition, but they foster thoughtful deliberation and help us ensure that we reach the right answers when we need them most.[21]

Orderly observation of the appellate process advances a similar purpose. The rule that parties may only appeal final judgments,[22] for instance, preserves the "independence of the district judge, as well as the special role that individual plays in our judicial system."[23] We think that sentiment is especially salient in this case, in which the district court deferred

---

[19] *Cf. Braidwood Mgmt.*, 104 F.4th at 957 ("[W]e are disinclined to decide questions without sufficient briefing, particularly ones of high stakes and of constitutional import. So rather than decide these heady questions ourselves without the benefit of any considered judgment below . . . we think it prudent for the district court to consider these arguments in the first instance."); *Ohio v. Wyandotte Chem. Corp.*, 401 U.S. 493, 498 (1971) ("This Court is . . . structured to perform as an appellate tribunal . . . .").

[20] Stephen I. Vladeck, *A Court of First View*, 138 HARV. L. REV. (forthcoming 2024) (manuscript at 1), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4726492.

[21] *See SEC v. Jarkesy*, 144 S. Ct. 2117, 2139 (2024).

[22] 28 U.S.C. § 1291.

[23] *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981).

No. 23-11097

to the Department's interpretation of ERISA rather than discharge its "solemn duty" of "interpreting the laws" without "influence from the political branches"[24]—the stuff of Article III.

Whatever efficiency or economy is gained by taking up the parties' invitation to decide their dispute in light of the intervening changes, both we and the circuit at large would be better served by the slight delay occasioned by remanding to the district court for its reasoned judgment.

\* \* \*

The parties can rest assured, however, that in leaving the district court to address the important statutory issues in the first instance, we have not completely thrown the values of efficiency and economy to the wind. Their arguments have thus far significantly aided the appellate decision-making process, and there is no reason to start afresh with a new panel. We therefore think a limited remand is appropriate under the circumstances. Just as the panel can have the benefit of the district court's "independent judgment"[25] as to whether the Department's new rule can be squared with either ERISA or the APA, the parties can have the benefit of a panel already acquainted with the briefs and argument of counsel. This disposition, we believe, strikes the right balance between the competing demands on the parties' time and the court's interest in the correct pronouncement of law.[26]

---

[24] *Loper Bright*, 144 S. Ct. at 2257.

[25] *Id.* at 2258.

[26] *Cf. United States v. Rodriguez-Pena*, 957 F.3d 514, 519 (OLDHAM, J., concurring) (discussing the costs saved by a limited remand in the sentencing context).

No. 23-11097

We accordingly VACATE the district court's judgment and REMAND for the limited purpose of reconsidering Plaintiffs' challenge in light of the Supreme Court's decision in *Loper Bright*.