IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

STATE OF UTAH, *et al.*,

    Plaintiffs,

v.

2:23-CV-016-Z

VINCE MICONE, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' competing motions for summary judgment. Plaintiffs filed their Motion for Summary Judgment ("Plaintiffs' Motion") (ECF No. 144), on October 16, 2024. Defendants filed their Motion for Summary Judgment ("Defendants' Motion") (ECF No. 145), on the same date. Having considered the motions, briefing, and relevant law, the Court **DENIES** Plaintiffs' Motion and **GRANTS** Defendants' Motion.

### INTRODUCTION

This case comes from then-President Biden's neutralization of a Trump-era rule that forbade ERISA fiduciaries from considering nonpecuniary factors when making investment decisions. The Department of Labor promulgated a replacement rule that, among other things, allowed fiduciaries to consider collateral benefits when deciding between competing investment options that each equally served the beneficiaries' financial interests. This Court held that *Chevron* deference meant the rule did not violate ERISA. The Fifth Circuit asks this Court to reconsider whether it violates ERISA after the Supreme Court reversed *Chevron*.

Now, the Court holds the rule is not contrary to ERISA under a post-*Chevron* analysis. Under the rule, a fiduciary faced with choosing between investment options — that all equally

serve the beneficiaries' financial interests — does not advance the interests of nonbeneficiaries nor act for a purpose other than their financial benefit when he chooses based on collateral factors. Plaintiffs' interpretation of ERISA would demand arbitrary randomness to choose between such investment options. It embodies the wooden textualism that courts should endeavor to avoid. *See United States v. Palomares*, 52 F.4th 640, 649 (5th Cir. 2022) (Oldham, J., concurring in the judgment) ("We do the law a disservice when we suggest that textualist exegeses are reducible to math problems, logic puzzles, or hyper-literalist readings . . . .").

ERISA does not require such capriciousness. A fiduciary has acted in full accord with his ERISA duty of loyalty when he chooses between investment options that *all* are valid options because they each maximize the beneficiaries' financial benefits.

## BACKGROUND

### I. The Employee Retirement Income Security Act and Previous Rules

Congress passed the Employee Retirement Income Security Act of 1974 ("ERISA") in response to automaker Studebaker's failures. Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829. Congress fashioned it to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(a). ERISA protects two sorts of pension plans: (1) defined benefit plans; and (2) defined contribution plans, called "individual account plans." 29 U.S.C. § 1002(34), (35). For the second sort, plan sponsors (usually the employer or a group of employers) must choose the participants' available investment options. *See id.* § 1002(16). ERISA dictates that these plan sponsors are fiduciaries because they may manage the plan themselves or hire others (*e.g.*, administrators, investment managers, trustees, and advisors) to perform various plan-management tasks. *See id.* § 1002(21)(A).

2

Congress imposed requirements and duties on the plan sponsors and their delegees to protect plan participants. These include requirements for "disclosure and reporting to participants and beneficiaries," and "standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." *Id.* § 1001(b). Beneficiaries have a remedy for the violation of any of these requirements. *Id.*; *id.* § 1132.

Congress placed two specific fiduciary duties on plan sponsors and their delegees. First, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." *Id.* § 1104(a)(1), (a)(1)(A)(i). This is the duty of loyalty. Second, fiduciaries must act with "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). This is the duty of prudence. These duties are together "the highest known to the law." *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan*, 960 F.3d 190, 194 (5th Cir. 2020) (quoting *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014)). They spring "from the common law of trusts." *Id.* (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015)).

The Department of Labor ("DOL") promulgates rules and regulations to carry out ERISA. 29 U.S.C. § 1135. Since ERISA's passage, DOL regulations have never allowed fiduciaries to overpower financial-benefit considerations with nonfinancial-benefit considerations — even though the details and strength of the regulatory language have waxed and waned. *See* ECF No. 39 at 14–16. Even so, DOL never once forbade consideration of nonfinancial benefits when selecting between investment options that served financial benefits

3

equally. Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights, 87 Fed. Reg. 73822, 73824 (Dec. 1, 2022) (codified at 29 C.F.R. pt. 2550).

Seeking additional clarity, DOL promulgated the Financial Factors in Selecting Plan Investments Rule ("2020 Rule"). Financial Factors in Selecting Plan Investments, 85 Fed. Reg. 72846 (Nov. 13, 2020). The 2020 Rule reiterated previous guidance and clarified that fiduciaries may only evaluate investments "based . . . on pecuniary factors." *Id.* at 72846. Fiduciaries must "act with a single-minded focus on the interests of beneficiaries" in accord with the duty of loyalty. *Id.* at 72848. The DOL found the 2020 Rule justified to remedy some "perceived variation in some aspects of [DOL's] past guidance on the extent a fiduciary may consider non-pecuniary factors in making investment decisions." *Id.* at 72850.

Consistent with previous guidance, the 2020 Rule forbade subordination of financial benefit considerations to other objectives. *Id.* at 72884. But it did not bar the consideration of nonpecuniary factors to break the tie between two "economically indistinguishable" investment alternatives. *Id.* at 72860–61, 72884. The 2020 Rule imposed documentation requirements when this occurred. *Id.* at 72851, 72884. However, the 2020 Rule stripped all discussion of the potential consideration of nonfinancial factors for financial benefit reasons. Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights, 87 Fed. Reg. at 72884, 73825, 73856. Confusion ensued. *Id.* Fiduciaries no longer had clarity on whether nonfinancial factors could be considered "even when those factors are financially material." *Id.* at 73826.

## II. The 2022 Rule

Seeking additional clarity once more, DOL promulgated the Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights Rule ("2022 Rule"). *Id.* at 73822. The 2022 Rule clarified that nonpecuniary factors could be considered for pecuniary reasons

4

when evaluating investment options. *Id.* at 73885. Further, the 2022 Rule clarified that risk and return factors "may include" environmental and social governance ("ESG") and related nonpecuniary factors depending on individual facts and circumstances. *Id.* at 73885. The 2022 Rule also modified the 2020 Rule's standard for the tiebreaker provision to "equally serve the financial interest of the plan over an appropriate time horizon." *Id.* Finally, it eliminated the 2020 Rule's documentation requirements surrounding the tiebreaker provision to not deter fiduciaries from finding a tie between two investment options. *Id.* at 73838.

### III. Procedural History

Plaintiffs challenged the 2022 Rule on January 26, 2023, and filed a preliminary injunction motion on February 24, 2023. ECF Nos. 1, 39. The Plaintiffs then consolidated trial on the merits with the preliminary injunction hearing under Federal Rule of Civil Procedure 65(a)(2). ECF No. 89. The Court granted Defendants' cross-motion for summary judgment on September 21, 2023. ECF No. 109. Plaintiffs timely appealed. ECF No. 115. The Fifth Circuit vacated this Court's judgment and remanded for the limited purpose of reconsidering Plaintiffs' challenge under the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo.* 144 S. Ct. 2244 (2024). The Fifth Circuit vacated and remanded because this Court's grant of summary judgment relied on the then-governing *Chevron* standard for its statutory analysis. The Supreme Court overturned *Chevron* while the Fifth Circuit appeal was pending. ECF No. 128.

After remand, the parties agreed to file supplemental briefs in support of motions for summary judgment and opposing the other parties' summary judgment motion. ECF No. 139. Accordingly, both sides filed their summary judgment motions on October 16, 2024. ECF Nos. 144, 145. And both responded to the others' summary judgment motion on November 6, 2024. ECF Nos. 168, 169. The Motions are now ripe.

5

## LEGAL STANDARD

Summary judgment is appropriate if the movant shows there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating both. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment "is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency." *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214–15 (5th Cir. 1996). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record." *Hi-Tech Pharmacal Co., Inc. v. FDA*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008). And it is the role of the court in an APA case to "sit[] as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see also Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022). In such a posture, the "entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). So summary judgment in an APA case "merely serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Oceana, Inc. v. Locke*, 831 F. Supp. 2d 95, 106 (D.D.C. 2011). Judicial review under the APA is limited to the administrative record. 5 U.S.C. § 706.

## ANALYSIS

On limited remand, the Court must decide whether the 2022 Rule is contrary to ERISA under *Loper Bright*'s standard. 144 S. Ct. 2244 (2024). This Court's vacated decision held the 2022 Rule did not violate ERISA under the then-binding *Chevron* deference standard. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), *overruled by Loper Bright*, 144 S. Ct. 2244. *Loper Bright* and the Administrative Procedure Act ("APA") now govern the contrary-to-law analysis by overturning *Chevron*. Plaintiffs reassert their original challenges to the 2022 Rule. *See* ECF No. 144 (claiming the 2022 Rule is contrary to law, is arbitrary and capricious, and is barred by the major questions doctrine).

Defendants agree that *Loper Bright* has implications regarding the statutory analysis of the contrary-to-law argument. ECF No. 145 at 7. But they counter that "*Loper Bright* has no relevance" to the prior holdings that the 2022 Rule is not arbitrary and capricious nor violative of the major questions doctrine. *Id.* Plaintiffs maintain that *Chevron*'s demise undercuts all these holdings. ECF No. 144 at 6. Thus, Plaintiffs would have this Court completely revisit its previous decision and Defendants would only have the statutory analysis revisited.

The Court declines to go beyond the contours of the Fifth Circuit's limited remand. The Fifth Circuit vacated this Court's judgment and remanded "for the limited purpose of reconsidering Plaintiffs' challenge in light of the Supreme Court's decision in *Loper Bright*." *Utah v. Su*, 109 F.4th 313, 322 (5th Cir. 2024). Elsewhere, the court again described its remand as "limited." *Id.* at 321. The court underscored the scope of the remand by clarifying it was meant to "leav[e] the district court to address the important *statutory* issues in the first instance." *Id.* (emphasis added).

7

An analysis of *Loper Bright* reveals why. *Loper Bright* did not disturb how courts evaluate a rule under the APA's arbitrary and capricious standard. *Loper Bright* overturned *Chevron* and held that the consequence was courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright*, 144 S. Ct. at 2273. *Chevron* itself was a statutory-interpretation case. *Chevron*, 467 U.S. at 849 n.22 ("[T]he controversy in these cases involves the meaning of the term 'major stationary sources' . . . ." (quoting 42 U.S.C. § 7502(b)(6) (1982))). Its demise changed how courts should interpret statutes — not how they review agency decisions for unreasonableness. *Loper Bright* even explained that the APA did not institute any deference standard for relevant questions of law but that the APA "*does* mandate that judicial review of agency policymaking and factfinding be deferential." 144 S. Ct. at 2261. Thus, *Loper Bright* "did not disturb the arbitrary and capricious review standard." BENJAMIN M. BARCZEWSKI, CONG. RSCH. SERV., R48320, LOPER BRIGHT ENTERPRISES V. RAIMONDO AND THE FUTURE OF AGENCY INTERPRETATIONS OF LAW 28 (2024); *see also id.* at ii ("Exercises of statutorily delegated policy discretion are (and will continue to be) reviewed under the APA's deferential arbitrary and capricious standard.").

The Fifth Circuit has treated *Loper Bright* as altering neither the arbitrary and capricious standard nor the major questions doctrine. In *Mayfield v. United States Department of Labor*, the Fifth Circuit treated its major questions analysis as entirely separate from *Loper Bright*'s implications. 117 F.4th 611, 617 ("Having determined that the major questions doctrine does not apply, we turn to [Appellant's] argument . . . [on] statutory authority. In *Loper Bright* . . . ."). It did the same for an arbitrary and capricious analysis in *Restaurant Law Center v. United States Department of Labor*. 120 F.4th 163, 175 (5th Cir. 2024) ("Even without *Chevron*, we understand that courts are still to conduct a similar arbitrary-and-capricious analysis . . . ."). And

8

when the appellants in *Airlines for America v. Department of Transportation* attempted to cite *Loper Bright* in an arbitrary and capricious analysis, the court dismissed the argument because *Loper* "involved disputes about the meaning of statutory language." No. 24-60231, 2025 WL 313998, at *11 n.13 (5th Cir. Jan. 28, 2025).

Consequently, the Court rejects Plaintiffs' request to expand the scope of the Fifth Circuit's limited remand and interpret *Loper Bright* to affect standards it does not affect. The Court's previous reasoning on whether the 2022 Rule is arbitrary and capricious or violative of the major questions doctrine stands.

## I. The 2022 Rule Is Not Contrary to Law

The APA demands courts "hold unlawful and set aside" agency action "not in accordance with law" and "in excess of statutory jurisdiction." 5 U.S.C. § 706(2)(A), (C). When doing so, the "court shall decide all relevant questions of law" and "interpret . . . statutory provisions." *Id.* § 706. After *Loper Bright*, the "text of the APA means what it says." 144 S. Ct. at 2262.

### A. *Loper Bright*'s Standard

*Loper Bright* changed how courts evaluate whether agency actions are in accordance with law. *Loper Bright* overruled *Chevron*, which required courts to defer to "permissible" agency interpretations of a statute even if the court "would have reached" a different view "if the question initially had arisen in a judicial proceeding." *Loper Bright*, 144 S. Ct. at 2264 (quoting *Chevron*, 467 U.S. at 843 n.11). The *Chevron* analysis proceeded in "three distinct steps." *Rest. L. Ctr.*, 120 F.4th at 170. District courts were "of course correct to apply the *Chevron* framework" before *Loper Bright*. *Id.* at 171. But now that *Chevron* is gone, this Court reevaluates under the *Loper Bright* standard.

*Loper Bright* simply instructs courts to follow "the APA's basic textual command." *Id.* It affirmed "the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Loper Bright*, 144 S. Ct. at 2261 (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)). It clarified that this is exactly what the APA requires. *Id.* (quoting 5 U.S.C. § 706 (courts decide "all relevant questions of law")). Now, courts employ "no deferential standard" when "answering those legal questions." *Id.* Instead, courts may use "all relevant interpretive tools" to find the "best" reading of a statute. *Id.* at 2266. No longer is a "permissible" reading enough. *Id.* If Congress does not define its terms, "we accord those terms their 'ordinary, contemporary, common meaning.'" *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024) (quoting *Rest. L. Ctr. v. United States Dep't of Lab.*, 115 F.4th 396, 403–04 (5th Cir. 2024) (internal quotation marks and citations omitted), *withdrawn by Rest. L. Ctr.*, 120 F.4th 163). In short, courts must "independently interpret the statute and effectuate the will of Congress." *Loper Bright*, 144 S. Ct. at 2263.

## B. Text and Structure

"As usual, we start with the statutory text." *Tanzin v. Tanvir*, 592 U.S. 43, 46 (2020). ERISA imposes fiduciary duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1)(A)–(C). The duty of loyalty's statutory text requires a fiduciary to act "solely in the interest of the participants and beneficiaries." *Id.* § 1104(a)(1). This means the fiduciary must act "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." *Id.* § 1104(a)(1)(A), (A)(i). The parties agree that the term "benefits" in ERISA means only "financial benefits" as the Supreme Court previously held. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014); ECF No. 145 at 8.

10

### 1. ERISA's Text

Plaintiffs argue that the "ordinary meaning" of "solely" and "exclusive" forbid the fiduciary from employing "any other considerations" when administering plans. ECF No. 144 at 7–8. They marshal dictionary definitions for each word to show that "solely" means all else is excluded, and "exclusive" means undivided or unshared. *Id.* at 8. Together, Plaintiffs argue that ERISA's duty of loyalty means fiduciaries must act for the undivided purpose of advancing the financial benefits of the beneficiaries alone. They maintain the 2022 Rule violates ERISA's strict text imposing high duties. "ERISA's duty of loyalty," they advance, "is a categorical prophylactic that bars collateral considerations." *Id.* at 9. But they argue the 2022 Rule violates this prophylactic bar by permitting fiduciaries to consider "collateral benefits" when deciding between "competing investments" that "equally serve the financial interests of the plan." 29 C.F.R. § 2550.404a-1(c)(2) (2023).

Defendants counter that the 2022 Rule's provisions naturally fit ERISA's language. ECF No. 145 at 8–9. They say the 2022 Rule "reaffirms ERISA's requirement that plan participants' financial interests must be paramount." *Id.* at 8. It does so because it bars fiduciaries from placing the interests of participants and beneficiaries under all other objectives. And it prohibits "sacrific[ing] investment return or tak[ing] on additional investment risk to promote goals unrelated to the interests of the participants and beneficiaries in their plans." 29 C.F.R. § 2550.404a-1(c)(1) (2023). They recognize that the 2022 Rule permits fiduciaries to consider "collateral factors under tightly limited circumstances" — namely when a fiduciary must choose between two competing investment plans that equally serve the plan. ECF No. 145 at 9. A fiduciary must adhere to his duty of prudence when determining whether two competing investments truly equally serve the plan. 29 C.F.R. § 2550.404a-1(c)(2) (2023). They conclude

11

the 2022 Rule's "tiebreaker provision installs double guardrails: both a strict ban on subordinating financial benefits and an insistence that any determination of a tie itself must be *prudent*. *Id.* (emphasis in original).

The 2022 Rule's tiebreaking provision does not violate ERISA's text because it never permits fiduciaries to deviate from exclusively achieving financial benefits for the beneficiaries alone. The Court, like Plaintiffs, turns to the definitions of "solely" and "exclusive." *See MCI Telecomms. Corp. v. Am. Telephone & Telegraph Co.*, 512 U.S. 218 (1994) (Scalia, J.) (construing a statutorily undefined term using several dictionaries). "Solely" means "to the exclusion of all else" or "without another." *Solely*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/solely [https://perma.cc/PP6U-3YDM]; *see also Solely*, OXFORD ENGLISH DICTIONARY (3d ed. rev. 2024) (defining "solely" as "[o]nly, merely, exclusively"). And "exclusive" means "[l]imited to a particular person, group, entity, or thing." *Exclusive*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Exclusive*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002) (defining "exclusive" as "single, sole").

Taken together, a fiduciary must act in the interest of the beneficiaries "to the exclusion of all" other interests for the "single," "limited" purpose of advancing their financial benefits. Plaintiffs overextend these meanings. They would stretch the text of ERISA to mean a fiduciary can *consider* nothing but financial factors on the beneficiaries' behalf. ECF No. 144 at 8.

That is not correct. ERISA instead defines whose *interest* the fiduciary must protect and what the fiduciary's *purpose* is. It says nothing of what they may consider. The ordinary meaning of these terms is that a fiduciary must always discharge his duties in the interest of the beneficiary alone and only for the purpose of gaining financial benefits. This does not mandate blinkered blindness. Nor will the Court read it to present a "logic puzzle[]." *Palomares*, 52 F.4th

at 649 (Oldham, J., concurring in the judgment); ECF No. 145 at 12 ("Plaintiffs' position is paradoxical."). Other considerations can come into play, but they must be oriented toward the interests of the beneficiary alone and not for another purpose than financial benefit.

The ordinary meaning of these terms defines *how* a fiduciary must discharge his duties. They do not bind what a fiduciary may consider when discharging his duties appropriately. A fiduciary violates ERISA's duty of loyalty the second he acts for the interests of another or has any other purpose besides promoting financial benefits. He does not contradict ERISA's duty of loyalty when discharging his duties when all actions are in the interests of the beneficiary and for the purpose of reaping financial benefits. Other considerations may be utilized if they do not alter or add to the interests the fiduciary represents or his purpose.

The 2022 Rule recognizes these textual realities. It prohibits a fiduciary from ever placing any other interest before the beneficiaries' interests. 29 C.F.R. § 2550.404a-1(c)(1) (2023). He must act for the beneficiaries' interest alone. And it bars a fiduciary from ever accepting lower investment returns or higher risks to promote anything that is not in the beneficiaries' sole interest. *Id.* In the tiebreaker provision, when a fiduciary comes to competing investment courses of action that "equally serve the financial interests of the plan over the appropriate time horizon," the fiduciary may look to "collateral benefits other than investment returns" to select the best plan. *Id.* § 2550.404a-1(c)(2). When doing so, the fiduciary may never "accept expected reduced returns or greater risk to secure such additional benefits." *Id.*

Nothing in the tiebreaker provision of the 2022 Rule allows the fiduciary to act in a way contrary to the sole interests of the beneficiaries or for any purpose other than their financial benefit. When the fiduciary identifies competing investment courses of action that all "equally serve the financial interests of the plan," then any choice between those actions *is* in the sole

13

interest of the beneficiary and for the exclusive purpose of maximizing his financial benefits. All options the fiduciary faces accomplish, and do not evade, the fiduciary's duty of loyalty.

Just as a driver, duty-bound to choose the fastest route to his destination, may choose the most scenic of two routes that each bring him to his destination at the same time, so too can a fiduciary choose a preferable investment option between two that will equally satisfy his duty of loyalty. When the driver takes the most scenic of the two fastest, he does not act for a different purpose than taking the fastest route — he did choose the fastest route. The fact it is also scenic does not mean he employed another purpose at all. If he had chosen the two most scenic routes — and *then* selected the fastest of the two — he would have acted with an impermissible purpose. He could choose the most scenic of fast routes but could not choose the fastest of scenic routes. The order elucidates his exclusive purpose.

In the same way, when a fiduciary comes to two routes that each equally serve the plan's financial interests, any choice he makes is for the "exclusive purpose" of financial benefit. He has acted with the duty ERISA requires. When he chooses between the plans using other factors, nothing about his purpose has changed. Of course, his duty has not "run out" or left him dutiless. *See* Oral Argument at 20:03, *Utah v. Su*, 109 F.4th 313 (2024) (No. 23-11097), https://www.ca5.uscourts.gov/OralArgRecordings/23/23-11097_7-9-2024.mp3    [https://perma.cc/S2CC-2Z7N]. Rather, whatever choice he makes is for the "exclusive purpose" ERISA mandates. Just like the driver may not choose the fastest of the scenic routes, the fiduciary cannot choose the most lucrative of the other-factor options. Doing so would mean he would be acting for a purpose other than financial benefit. *See* Oral Argument at 18:43–20:15, *Su*, 109 F.4th 313, https://www.ca5.uscourts.gov/OralArgRecordings/23/23-11097_7-9-2024.mp3 [https://perma.cc/S2CC-2Z7N]. He would have no way of knowing he found the most financially advantageous plan if he began

14

his search with impermissible factors. But he could consider them at the end once he reaches a tie because any choice is in accord with his duty. Because then he only considers them to aid his exclusive purpose of achieving financial benefits.

## 2. Duty of Diversification and the Tiebreaker Provision

Plaintiffs argue that even if the tiebreaker provision does not violate ERISA's text, it is needless because "ERISA already supplies its own default answer, making a tiebreaker unnecessary." ECF No. 144 at 8. This default answer is ERISA's duty to diversify investment options. ERISA imposes a duty to diversity "to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C). Plaintiffs argue this means "choose both investments when possible." ECF No. 144 at 8.

Defendants uncover the obvious textual flaw in the argument. ERISA's text plainly says diversification is *not* required when "it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C). It is clearly not prudent to do so when "investing in two (or more) alternatives that equally serve the financial interests of the plan, rather than one, entails additional costs (such as transaction or monitoring costs) that offset the benefits" of diversifying. Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights, 87 Fed. Reg. at 73836.

Plaintiffs counter that the 2022 Rule itself does not limit its application to breaking ties when diversification is imprudent. ECF No. 168 at 5. But it plainly does. When a fiduciary determines whether a tie exists, he must do so prudently. 29 C.F.R. § 2550.404a-1(c)(2) (2023). And the duty of prudence includes diversifying unless clearly imprudent. Thus, investing in both investment options would be required in a tiebreaker scenario *only if* it were prudent to do so. ERISA's duty to diversify means the tiebreaker provision is textually narrow — but not needless. Thus, it does not permit violating ERISA's duty of prudence, either.

15

### 3. ERISA's Exceptions to the Duty of Loyalty

Plaintiffs also attempt an *expression unius est exclusion alterius* argument. They claim that ERISA provides for exceptions to its duty to loyalty. *See* ECF No. 144 at 8–9 (citing 29 U.S.C. §§ 1103(c)(2)(A), (c)(2)(b), (d), 1104(a)(1), 1107(b)(1), (d)(3)(A)(ii), 1108(c)(3)). Because, they argue, Congress permitted some narrow exceptions to the duty of loyalty then the 2022 Rule's tiebreaker provision cannot add another. However, Defendants note that the "tiebreaker . . . is not an exception to ERISA's fiduciary duties." ECF No. 167 at 6. They are again correct. The tiebreaker provision provides clarification on how to choose between several equal options — all of which would accord with a fiduciary's duties. It does nothing more. It does not need an exception to the duty of loyalty simply because it does not permit violating the duty of loyalty.

\* \* \*

In summary, the 2022 Rule's tiebreaker provision does not violate ERISA's text that imposes a duty of loyalty. It does not authorize a fiduciary to act in the interest of someone other than the beneficiary. It does not authorize a fiduciary to act for other purposes than the purpose of advancing the beneficiaries' financial benefit. If it did, then it would permit other considerations to be placed first such that their pursuit became the fiduciary's purpose. Instead, it only allows those other considerations — not to alter interests or change purposes — but to carry them out.

Plaintiffs' contention that "[e]ven a coin flip is preferable to collateral considerations" illustrates that Plaintiffs' reading of ERISA inevitably leads to irrationality. *See* RESTATEMENT (THIRD) OF AGENCY § 8.01 cmt. b (AM. L. INST. 2006) (explaining that "flipping a coin" in an analogous scenario is acting in bad faith against general fiduciary principles); *cf. Bostock v.*

16

*Clayton Cnty.*, 590 U.S. 644, 789 n.4 (Kavanaugh, J., dissenting) (explaining that "the absurdity canon . . . reflects the law's focus on ordinary meaning rather than literal meaning"). When Plaintiffs advance a reading that forbids considering anything but arbitrariness, they entirely foreclose a fiduciary's ability to choose between equal investments on *any grounds*. ECF No. 145 at 12 (explaining that "*any* means of choosing among [two equal plans] is definitionally 'collateral'"). The Court declines to stretch ERISA's text to reach a result requiring randomness.

### C. Common Law Roots

ERISA's text "codified the touchstone of common law fiduciary status." *Chamber of Com. of the U.S. v. U.S. Dep't of Lab.*, 885 F.3d 360, 369 (5th Cir. 2018). Because Congress used the common law term "fiduciary" in ERISA, courts are to presume, absent contrary indication, that "Congress intend[ed] to incorporate the well-settled meaning of the common-law terms it use[d]." *Sekhar v. United States*, 570 U.S. 729, 732 (2013) (quoting *Neder v. United States*, 527 U.S. 1, 23 (1999)); *see also* RESTATEMENT (THIRD) OF TRUSTS § 78(1) (2007) ("[A] trustee has a duty to administer the trust solely in the interest of the beneficiaries . . . ."). In other words, the "old soil" comes along with the term. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484 (2023) (quoting *Sekhar*, 570 U.S. at 733).

In the ERISA context, the presumption is particularly strong. *See Tibble v. Edison Int'l*, 575 U.S. 523, 528–29 (2015) ("In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts."). But it is not ironclad. *See Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996) ("[W]e believe that the law of trusts often will inform, but will not necessarily determine the outcome of, an effort to interpret ERISA's fiduciary duties."). Though rooted in the common law, ERISA's text is ultimately what governs. *See id.* at 528 (Thomas, J., dissenting) ("[W]e must not forget that ERISA is a statute, and in 'every case involving

17

construction of a statute,' the 'starting point . . . is the language itself.'" (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197 (1976))). The text is rooted in the old soil but, of course, it is not itself the old soil.

Thus, the common law meanings help elucidate the statutory terms but do not govern their meaning. *See Varity Corp.*, 516 U.S. at 528 (Thomas, J., dissenting) (interpreting the common law meanings first and then the statutory provisions "stands [the] traditional approach on its head"). Rather, Congress delegated to the Department of Labor the power to craft "an important body of regulations interpreting ERISA fiduciary law." JOHN H. LANGBEIN, SUSAN J. STABILE & BRUCE A. WOLK, PENSION AND EMPLOYEE BENEFIT LAW 557 (4th ed. 2006). This delegation is express authority to form an interpretive framework around the statutory text — so long as those regulations are not contrary to the statutory text. The common law functions similarly here. Courts may look to it to help determine the statutory meaning. But the common law meaning *itself* may not overcome an otherwise-valid DOL regulation. Instead, the common law may reveal statutory meaning which then may overcome the DOL regulation.

In the common law and now, fiduciary duties are "the highest known to the law." *Schweitzer*, 960 F.3d at 194 (internal quotation omitted). The common law duty of loyalty had stringent standards. It barred fiduciaries from being "influenced by the interest of any third person or by motives other than the accomplishment of the purposes of the trust." RESTATEMENT (THIRD) OF TRUSTS § 78 cmt. f (2007). To that end, the fiduciary cannot "be motivated by a purpose of advancing or expressing the trustee's personal views concerning social or political issues or causes." *Id.* § 90 cmt. c. At heart, the duty of loyalty prevented a fiduciary from benefitting from or placing his interest ahead of the beneficiaries' interests. And it extended to the interests of third parties. The duty of loyalty means if there is ever a hint of conflict between

18

the interests of the beneficiaries and the interests of the fiduciary or others, the fiduciary *cannot consider* any other interest than the beneficiaries. And in the ERISA context, that extends to barring the fiduciary from considering any other purpose than the beneficiaries' financial benefit.

The Fifth Circuit has summarized these common law doctrines and rationales. "It is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously he will favor one side as against the other, where there is or may be a conflict of interest." *Fulton Nat. Bank v. Tate*, 363 F.2d 562, 571 (5th Cir. 1966) (citing GEORGE GLEASON BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 543 (2d ed. 1960)).

Despite the apparent clarity of these doctrines, "considerable disagreement continues about what loyalty should require" in the social investing context. RESTATEMENT (THIRD) OF TRUSTS § 78 cmt. f (2007) (citing scholarship and cases). But a clear view of the common law reveals that it does not permit a fiduciary to act in two different capacities at once. A fiduciary, in the common law framework, may not act with conflicting interests because he "may favor the [other interest], whether consciously or unconsciously, over that of the beneficiaries." BOGERT, *supra*, § 543 (rev. 3d ed. Supp. 2024). Thus, "[n]o form of so-called 'social investing' is consistent with the duty of loyalty if the investment activity entails sacrificing the interests of trust beneficiaries—for example, by accepting below-market returns—in favor of the interests of the persons supposedly benefitted by pursuing the particular social cause." UNIF. PRUDENT INV. ACT § 5 cmt. (UNIF. L. COMM'N 1994).

The common law duty of loyalty accords with ERISA's text and adds clarity to its meaning. When ERISA's text is viewed through its common law roots, the 2022 Rule still does not violate ERISA's text. Nothing in the 2022 Rule permits sacrificing beneficiaries' financial

19

benefits to other interests. The common law duty of loyalty barred even the temptation for a fiduciary to act in multiple roles. The 2022 Rule does not allow a fiduciary to act in multiple roles. Instead, the fiduciary must keep the financial benefits of the beneficiaries as his exclusive purpose. He can only select plans that maximize the beneficiaries' financial benefits. He can select no other. The 2022 Rule explicitly recognizes this reality: "A fiduciary may not subordinate the interests of the participants and beneficiaries . . . to other objectives, and may not sacrifice investment return or take on additional investment risk to promote benefits or goals unrelated to interests of the participants and beneficiaries . . . ." Prudence and Loyalty in Selecting Plan Investments and Exercising Shareholder Rights, 87 Fed. Reg. at 73885.

Plaintiffs summarize that there "is no room for mixed motives, even if a fiduciary claims to not subordinate financial interests." ECF No. 144 at 7. But their description reveals they misread the 2022 Rule. It does not permit mixed motives. And it shows it is more than just a subordination principle. If it were such, a fiduciary could consider any other interests at any time, so long as the financial interests came first. But he cannot. Only when a fiduciary faces multiple, equal investment options may he select one using other factors if diversification is not prudent.

That is how the 2022 Rule is written. It says only after a "fiduciary prudently concludes that competing investments, or competing investment courses of action, equally serve the financial interests of the plan" can he *then* consider "collateral benefits" to choose. 29 C.F.R. § 2550.404a-1(c)(2) (2023). Nothing about that language permits dual loyalties, competing purposes, or conflicts. By only permitting collateral benefit consideration once a tie is reached, the 2022 Rule excludes the possibility of competing purposes or conflicting interests. In short, it does not let a fiduciary "be motivated by a purpose of advancing or expressing [his] personal views." RESTATEMENT (THIRD) OF TRUSTS § 78 cmt. f (2007).

20

By requiring a financial tie between investment options, the 2022 Rule prohibits a fiduciary "from being put into a position where he has dual loyalties." *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 334 (1981) (quoting H.R. CONF. REP. NO. 93-1280, at 309 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 5038, 5089). It merely lets him consider collateral benefits fully in accord with acting in the sole interest of the beneficiaries and for the exclusive purpose of securing their financial benefit. The 2022 Rule is not contrary to ERISA's text even when viewed through its common law source.

## D. Congressional Action and Inaction

Plaintiffs invoke ERISA's drafting history to argue that fiduciaries may not engage in social investing. ECF No. 144 at 11. They claim that Congress has considered several proposals allowing fiduciaries to engage in "social investing" but did not include such language in ERISA's final text. *Id.* (citing James D. Hutchinson & Charles G. Cole, *Legal Standards Governing Investment of Pension Assets for Social and Political Goals*, 128 U. PA. L. REV. 1340, 1365–69 (1980)). Because Congress rejected those proposals, Plaintiffs argue that means ERISA's text forbids social investing. Defendants respond that these proposals would have allowed outright social investing — not allowing collateral benefits to break virtual ties between investment options. ECF No. 167 at 7.

Plaintiffs are correct that ERISA's text does not allow outright social investing. It does not allow consideration of any other factors but the beneficiaries' financial benefit when those collateral benefits alter the fiduciary's purpose or if he would be acting on behalf of multiple people simultaneously. But as explained, that is not what the 2022 Rule permits. It permits, in full accord with the fiduciary's duties, a fiduciary to look to collateral factors to break a tie when investment options would equally serve the plan, and prudence would disallow investing in both.

21

Of course ERISA prohibits outright social investing because then the fiduciary would be acting for a different purpose and on behalf of other interests.

Even though Plaintiffs are correct, it is not because they invoke failed congressional proposals. Courts must refrain from the temptation to glimpse at proposals that do not pass bicameralism and presentment when interpreting statutes. *See Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 947–51 (1983) (explaining the necessity of bicameralism and presentment before affording improper weight to Congress's pronouncements). "Failed legislative proposals are 'a particularly dangerous ground on which to rest an interpretation of a prior statute.'" *United States v. Craft*, 535 U.S. 274, 287 (2002) (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990)). They are dangerous because "several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994) (quoting *Pension Benefit Guar. Corp.*, 496 U.S. at 650). Thus, they deserve "little weight" despite some inconsistency in the Supreme Court's use of them.[1] *Id.*

Plaintiffs' own authority takes a view different from theirs and illustrates why courts should not depend on failed legislative proposals in statutory interpretation. *See* Hutchinson & Cole, *supra*, at 1367 (explaining that despite the failed legislative proposals, "an argument can be

---

[1] None of this is to say failed legislative proposals never have purchase. For example, they can be relevant to assessing whether an agency action implicates a major question. In *West Virginia v. EPA*, Justices Gorsuch and Alito clarified the difference. If "Congress has 'considered and rejected' bills authorizing something akin to the agency's proposed course of action" then that "may be a sign that an agency is attempting to 'work around' the legislative process to resolve for itself a question of great political significance." *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 743 (2022) (Gorsuch, J., concurring) (first quoting *id.* at 731; and then quoting *Nat'l Fed'n of Indep. Bus. v. Occupational Safety & Health Admin.*, 595 U.S. 109, 122 (2022) (Gorsuch, J., concurring)). They reiterated that when using failed legislation, it is not to "resolve what a duly enacted statutory text means, only to help resolve the antecedent question whether the agency's challenged action implicates a major question." *Id.* at 743 n.4. This is not an example of the Court's inconsistent use of failed legislative proposals. Because, as explained, the Court need not revisit the major-questions analysis, it declines to credit failed legislative proposals here.

made that when a fiduciary has narrowed his list of potential investments to economically comparable alternatives, the statute should not proscribe his selection of the alternative that in the long run may produce indirect benefits").

For similar reasons, Plaintiffs' argument that Congress has expressed its disapproval of the 2022 Rule is unpersuasive. Congress passed a resolution advancing its view that the 2022 Rule does not implement ERISA. *See* H.R.J. Res. 30, 118th Cong. (2023). But then-President Biden vetoed that resolution. For the same reasons that DOL's interpretation of ERISA is not persuasive, Congress's unenacted views do not dictate ERISA's meaning. *See Loper Bright*, 144 S. Ct. at 2262 (explaining that agency interpretations are "especially useful" only if they were issued "contemporaneously with the statute" and have "remained consistent over time"). Rather, courts interpret the law. *See Loper Bright*, 144 S. Ct. at 2257 ("When the meaning of a statute [is] at issue, the judicial role [is] to 'interpret the act of Congress . . . .'" (quoting *Decatur v. Paulding*, 39 U.S. (14 Pet.) 497, 515 (1840))). Congress can offer views but without bicameralism and presentment, its views remain mere views. *Chadha*, 462 U.S. at 947–48 (explaining presentment "reflects the Framers' careful efforts to check whatever propensity a particular Congress might have to enact . . . ill-considered measures").

## CONCLUSION

Plaintiffs would have this Court vacate the 2022 Rule to "restore the protections of the 2020 rules." ECF No. 39 at 25. However, the 2020 Rule has a tiebreaker provision that would also violate Plaintiffs' interpretation of ERISA. But ERISA's text does not invalidate the tiebreaker provision of the 2020 Rule or the 2022 Rule. Fiduciaries should strenuously guard against letting impermissible considerations taint their decisions. And wisdom would counsel the protections of the 2020 Rule to aid this prevention. *See* Financial Factors in Selecting Plan

23

Investments, 85 Fed. Reg. 72884. But it is not the province of the Court to decide the wisest outcome. Rather, it interprets the law as it finds it. The 2022 Rule does not permit a fiduciary to act for other interests than the beneficiaries' or for other purposes than the beneficiaries' financial benefit. For that reason, under the *Loper Bright* standard, it is not contrary to law. Accordingly, Plaintiffs' Motion is **DENIED** and Defendants' Motion is **GRANTED**.

**SO ORDERED**.

February **14**, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

24